UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
ALBANY DIVISION

---

GAIL COLLINS, DEAN DEVITO, MICHAEL LAMOUREUX,
AND SCOTT LOBDELL INDIVIDUALLY, ON BEHALF OF
THE NORTHEAST GROCERY, INC. 401(K) SAVINGS PLAN AND ON
BEHALF OF ALL SIMILARLY SITUATED PARTICIPANTS AND
BENEFICIARIES OF THE PLAN,

PLAINTIFFS,

v.

NORTHEAST GROCERY, INC.; THE ADMINISTRATIVE
COMMITTEE OF THE NORTHEAST GROCERY, INC. 401(K)
SAVINGS PLAN; JOHN AND JANE DOES 1-30 IN THEIR
CAPACITIES AS MEMBERS OF THE ADMINISTRATIVE
COMMITTEE,

DEFENDANTS.

Civil Action No.
5:24-CV-00080 (DNH/MJK)

---

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

HARTER SECREST & EMERY LLP

Erika N.D. Stanat, Esq.
1600 Bausch and Lomb Place
Rochester, NY 14604-2711
Telephone:  585.231.1161
Email:  estanat@hselaw.com

TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ................................................................................................... 2

ARGUMENT .................................................................................................................... 4

    A.   Standard of Review ....................................................................................... 4

        i.    12(b)(1) ............................................................................................ 4

        ii.   12(b)(6) ............................................................................................ 5

    B.   Plaintiffs Lack Standing to Pursue Claims Regarding Funds in Which They Did Not Invest and for Which They Did Not Pay Fees .................................... 7

    C.   The Complaint Fails to State Any Plausible Claims of Fiduciary Breach of Prudence ...................................................................................................... 9

        i.    Plaintiffs' Allegations that Certain Better Performing Funds Were Available are Insufficient to Create a Plausible Inference of Imprudence ................................................................................... 10

        ii.   Plaintiffs' Allegations Concerning Defendants' Selection of Share Classes are Insufficient to Create a Plausible Inference of Imprudence ................................................................................... 14

        iii.  Plaintiffs' Allegations Concerning the Propriety of the Plan's Recordkeeping Fees Do Not Raise Any Plausible Inference of Imprudence ................................................................................... 16

    D.   Plaintiffs Fail to Plausibly State a Claim for Breach of the Fiduciary Duty of Loyalty .................................................................................................... 18

    E.   Plaintiffs' Breach of Fiduciary Duty By Omission Claim Fails as Plaintiffs Have Not Identified Any Transactions the Defendants Allegedly Should Have Pursued. ............................................................................................ 22

    F.   Plaintiffs' Failure-to-Monitor Claim Fails as There Is No Plausible Claim of Fiduciary Breach .................................................................................... 22

    G.   Plaintiffs' Failed to Exhaust Their Claims as Required by the Plans .............. 23

    H.   Plaintiffs' Claims are Barred by the Statute of Limitations ........................... 24

CONCLUSION ............................................................................................................... 25

TABLE OF AUTHORITIES

PAGE(S)

CASES

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*,
   821 F.3d 352 (2d Cir. 2016).............................................................................7

*Anderson v. Intel Corp. Inv. Policy Comm.*,
   579 F. Supp. 3d 1133 (N.D. Cal. 2022) ......................................................11, 12

*Antoine v. Marsh & McLennan Co.*,
   No. 22-CIV-6637 (JPC), 2023 U.S. Dist. LEXIS 176561
   (S.D.N.Y. Sept. 30, 2023).............................................................................7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................5, 6, 7

*Baur v. Veneman*,
   352 F.3d 625 (2d Cir. 2003).........................................................................8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................................................5, 6, 9

*Bickley v. Caremark Rx, Inc.*,
   461 F.3d 1325 (2d Cir. 2006).....................................................................23

*Bird v. Shearson Lehman/Am. Express*,
   926 F.2d 116 (2d Cir. 1991).......................................................................24

*Boyette v. Montefiore Med. Ctr.*,
   No. 22-cv-5280 (JGK), 2023 U.S. Dist. LEXIS 203442
   (S.D.N.Y. Nov. 13, 2023)..........................................................................8, 9

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002)........................................................................6

*Cunningham v. Cornell Univ.*,
   86 F.4th 961 (2d Cir. 2023) .....................................................................19, 20

*Cunningham v. Cornell Univ.*,
   No. 16-cv-6525 (PKC), 2017 U.S. Dist. LEXIS 162420........................................21

*Cunningham v. USI Ins. Servs., LLC*,
   No. 21 Civ. 1819 (NSR), 2023 U.S. Dist. LEXIS 220905
   (S.D.N.Y. Dec. 11, 2023)....................................................................16, 17, 21

*Davis v. Wash. Univ. in St. Louis*,
   960 F.3d 478 (8th Cir. 2020) ................................................................12

*Ferguson v. Ruane Cunniff & Goldfarb Inc.*,
   No, 17-cv-6685 (ALC), 2019 U.S. Dist. LEXIS 160112
   (S.D.N.Y. Sep. 18, 2019) ......................................................... *passim*

*Fifth Third Bancorp v. Dudenhoeffer*,
   573 U.S. 409 (2014).............................................................6, 10, 24

*Heimeshoff v. Hartford Life & Accident Ins. Co.*,
   571 U.S. 99 (2013)............................................................................25

*Hewitt v. W. & S. Fin. Grp. Flexible Benefits Plan*,
   No. 17-5862, 2018 U.S. App. LEXIS 9829 (6th Cir. Apr. 18, 2018)....................25

*Hughes v. Northwestern Univ.*,
   142 S. Ct. 737 (2022) ..........................................................................6

*In re Bausch & Lomb, Inc. ERISA Litig.*,
   No. 06-CV-6297, 2008 U.S. Dist. LEXIS 106269
   (W.D.N.Y. Dec. 12, 2008) ...................................................................6

*In re DeRogatis*,
   904 F.3d 174 (2d Cir. 2018).................................................................19

*In re Omnicom ERISA Litig.*,
   No. 20-cv-4141 (CM), 2021 U.S. Dist. LEXIS 144054
   (S.D.N.Y. Aug. 2, 2021) .....................................................................8

*Kamen v. Am. Tel. & Tel. Co.*,
   791 F.2d 1006 (2d Cir. 1986)................................................................5

*Kennedy v. Empire Blue Cross & Blue Shield*,
   989 F.2d 588 (2d Cir. 1993).................................................................23

*Klotz v. Xerox Corp.*,
   519 F. Supp. 2d 430 (S.D.N.Y. 2007)....................................................24

*Lujan v. Defs. Of Wildlife*,
   504 U.S. 555 (1992)..........................................................................5, 7

*Makarova v. United States*,
   201 F.3d 110 (2d Cir. 2000).................................................................5

*Meiners v. Wells Fargo & Co.*,
   898 F.3d 820 (8th Cir. 2018) ...............................................................11

*N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*,
   709 F.3d 109 (2d Cir. 2013) ................................................................................. 10

*O'Driscoll v. Plexus Corp.*,
   No. 20-C-1065, 2022 U.S. Dist. LEXIS 150844
   (E.D. Wis. Aug. 22, 2022) ..................................................................................... 17

*Patrico v. Voya Fin., Inc.*,
   2018 U.S. Dist. LEXIS 41157 (S.D.N.Y. Mar. 13, 2018) ..................................... 20

*Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Centers
   Ret. Plan v. Morgan Stanley Investment Mgmt. Inc.*,
   712 F.3d 705 (2d Cir. 2013) ......................................................................... *passim*

*Rinehart v. Lehman Bros. Holdings, Inc.*,
   817 F.3d 56 (2d Cir. 2016) .................................................................................... 23

*Roe v. St. John's Univ.*,
   91 F.4th 643 (2d Cir. 2024) ..................................................................................... 9

*Rosen v. Prudential Ret. Ins. & Annuity Co.*,
   718 Fed. App'x 3 (2d Cir. 2017) ...................................................................... 18, 21

*Sacerdote v. N.Y. Univ.*,
   9 F.4th 95 (2d. Cir. 2021) ...................................................................................... 14

*Sacerdote v. N.Y. Univ.*,
   No. 16-cv-6284 (KBF), 2017 U.S. Dist. LEXIS 137115
   (S.D.N.Y. Aug. 25, 2017) ........................................................................... 14, 19, 20

*Singh v. Deloitte LLP*,
   650 F. Supp. 3d 259 (S.D.N.Y. 2023) ....................................................... 5, 6, 8, 16

*Smith v. CommonSpirit Health*,
   37 F.4th 1160 (6th Cir. 2022) ....................................................................11, 13, 15

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ................................................................................................. 4

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ................................................................................................. 7

*Taveras v. UBS AG*,
   612 F. App'x 27 (2d Cir. 2015) .......................................................................... 7, 8

*Tawater v. Health Care Serv. Corp.*,
   No. CV 18-47-GF-BMM, 2018 U.S. Dist. LEXIS 204309
   (D. Mont. Dec. 3, 2018) ......................................................................................... 25

*Terraza v. Safeway, Inc.*,
    241 F. Supp. 3d 1057 (N.D. Cal. 2017) ...................................................................18

*Thole v. U.S. Bank N.A.*,
    140 S. Ct. 1615 (2020) ....................................................................................................7

*Tibble v. Edison Int'l*,
    639 F. Supp. 2d 1122 (C.D. Cal. 2009),
    *vacated on other grounds*, 575 U.S. 523 (2015) ......................................................22

*Wehner v. Genentech, Inc.*,
    No. 20-cv-06894-WHO, 2021 U.S. Dist. LEXIS 111341
    (N.D. Cal. June 14, 2021) ..............................................................................................11

*White v. Chevron Corp.*,
    752 Fed. App'x 453 (9th Cir. 2018), *cert denied*, 139 S. Ct. 2646 (2019) .............7

*Zamora v. Fit Int'l Grp. Corp.*,
    834 Fed. App'x 622 (2d Cir. 2020) ...............................................................................5

## STATUTES

29 U.S.C. § 1002(34) ...........................................................................................................2

29 U.S.C. § 1104(a)(1)(B) ..................................................................................................9

29 U.S.C. § 1106(a) ...........................................................................................................20

29 U.S.C. § 1106(a)(1) ......................................................................................................20

29 U.S.C. § 1106(a)(1)(C) .................................................................................................20

29 U.S.C. § 1113(1) ...........................................................................................................25

29 U.S.C. § 1132(a)(1)(B) .................................................................................................23

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(1)........................................................................................................4

Fed. R. Civ. P. 12(b)(6)........................................................................................................5

U.S. Const. art. III, § 2, cl. 1 ..............................................................................................4

### PRELIMINARY STATEMENT

This case is just one in a flood of recent class action complaints brought against employer-sponsored retirement plans.  In nearly of all of these cases, plaintiffs cast conclusory and unfounded assertions of breaches of fiduciary responsibilities against those entities and individuals charged with administering the plans, accusing them of imprudence in the selection of plan investment options and management of plan costs, fees, and expenses.  The allegations in these cases are largely devoid of any facts concerning the decision-making processes employed by plan fiduciaries, with plaintiffs asking the courts to draw inferences of imprudence from hindsight analysis and reliance on circumstantial information.  This action, brought by current and/or former participants in the Tops Markets, Price Chopper, and/or Northeast Grocery Plans, is no different. Given the important benefits provided by ERISA-governed benefit plans and in the face of this rising tide of litigation, courts have encouraged increased judicial scrutiny at the motion to dismiss stage to protect ERISA fiduciaries from burdensome and meritless claims.

Plaintiffs assert claims against Defendants for alleged breaches of the fiduciary duties of prudence and loyalty, an alleged failure to monitor, and alleged commission of prohibited transactions.  In addition to the Plaintiffs' lack of standing to assert their claims, their failure to exhaust their administrative remedies, and their failure to timely assert their claims, they ground their case entirely on conclusory and unsubstantiated allegations that do not support any inference of impropriety or imprudence.  ERISA's duty of prudence requires fiduciaries to engage in a prudent process to reach reasonable decisions in managing and administering a plan.  Here, Plaintiffs fail to plead any facts concerning the processes employed by the fiduciaries, asking this Court to rely instead on Plaintiffs' backward-looking circumstantial allegations to conclude that Defendants were imprudent in their administration of the plans.

For these reasons as detailed more fully below, Defendants respectfully request that the Court grant this motion and dismiss Plaintiffs' claims with prejudice.

### STATEMENT OF FACTS

Plaintiffs are current or former employees of Tops Markets ("Tops") or Price Chopper ("Price Chopper") (or in both cases, their affiliates) who participated in one or more participant directed defined contribution 401(k) plans established under ERISA, 29 U.S.C. § 1002(34), and offered by their employers, to allow them to save for their retirements. Compl. ¶¶ 15–18. These 401(k) plans offered participants a variety of investment options covering different asset classes, investment management styles (including both actively managed funds and passively managed index funds), and risk profiles. *See, e.g.*, *id.* ¶¶ 10, 29. And as with all 401(k) plans, there were fees and expenses associated with the administration of, recordkeeping for, and management of the investments in these plans. *See, e.g.*, *id.* ¶¶ 44, 46, 80–82, 96.

In 2021, Tops and Price Chopper merged, as part of which process a new parent company, Northeast Grocery, Inc. ("Northeast Grocery") was created. Since January 1, 2023, eligible employees of the newly created Northeast Grocery and its affiliates have had the opportunity to participate in the participant-directed Northeast Grocery 401(k) Plan (the "Northeast Grocery Plan"), the successor by merger to the Price Chopper Associate 401(k) Plan and the Tops Markets, LLC 401(k) Retirement Savings Plan. As with the Tops and Price Chopper Plans, the Northeast Grocery Plan offers to its participants a variety of investment options, including investments in a variety of asset classes and with an array of management styles and risk/reward profiles. *Id.* ¶¶ 2, 7, 10. Like the Tops and Price Chopper Plans, there are administration, recordkeeping, and investment management fees associated with the operation of the Northeast Grocery Plan. Plaintiffs do not allege clearly whether any of them are still

2

participants in the Northeast Grocery Plan, and/or, whether they contributed to the Northeast Grocery Plan after its creation.

While the allegations in the Complaint are both imprecise and conclusory, Plaintiffs appear to challenge the prudence of the selection and/or retention by the committees charged with administering the plans of eleven of the funds[1] available at some undetermined point in time under one of the Tops, Price Chopper, or Northeast Grocery Plans.  Plaintiffs allege that the mere selection or retention of these funds (or particular share classes of a fund) over others necessarily implies an imprudent process.  *See, e.g.*, *id.* ¶ 22, 26, 28, 35–43, 46–58, 60–79, 81–84, 95–121. Other than the Blue Chip Fund, in which two of the Plaintiffs allege that they invested, Plaintiffs do not indicate that they personally invested in any of the challenged funds.  *See id.* ¶¶ 15, 17.

Notably, the Complaint is devoid of any factual allegations sufficient to support an inference that the specific processes employed by the various plan committees to select the funds were flawed or imprudent.  Instead, Plaintiffs allege broadly that the Defendants breached their duties by: (1) failing to timely remove certain funds, *see, e.g.*, *id.* ¶¶ 44–58, (2) offering certain managed funds that did not outperform the market by a margin greater than the fund manager's cost, *see, e.g.*, *id.* ¶¶ 59–79, (3) not offering the lowest cost class share available for certain funds, *see, e.g.*, *id.* ¶¶ 29–43, (4) paying excessively high recordkeeping fees, *see, e.g.*, *id.*

---

[1] Plaintiffs' prudence challenge appears to relate to the selection of the following funds: the T. Rowe Price Blue Chip Gr I Fund ("Blue Chip Fund"), the T. Rowe Price Retirement Trust "A" Fund ("Trust 'A' Fund"), the Loomis Sayles Small Cap Value Fund ("Loomis Value Fund"), the Loomis Sayles Small Cap Growth Fund ("Loomis Growth Fund"), the Loomis Sayles Small Cap Growth IS Fund ("Loomis Small Cap IS Fund"), the MFS Mid Cap Value R3 Fund ("MFS Fund"), the MassMutual Mid Cap Growth R5 Fund (the "MassMutual Fund"), the Victory Small Company Fund ("Victory Fund"), the Fidelity Freedom Target Date Funds ("Fidelity TDFs"), the Blackrock Total Return Fund ("Blackrock Fund"), and the Dodge & Cox International Fund ("Dodge Fund") (collectively "the challenged funds.").  *See* Compl. ¶¶ 15, 36, 37, 40–42, 46, 48, 53, 55, 56, 63, 66, 68, 107, 126, 128.

¶¶ 85-121, (5) failing to monitor, *see, e.g.*, *id.* ¶¶ 80–84, (6) engaging in unidentified "prohibited transactions," *see, e.g.*, *id.* ¶¶ 122–131, and (7) failing to bring an action against themselves regarding said unidentified "prohibited transactions," *see, e.g.*, *id.* ¶¶ 210–222.

Plaintiffs assert seven causes of action in the Complaint.  Five of the claims are asserted against the administrative committee of the Northeast Grocery Plan (the "Committee") and its members only, including claims for breach of the fiduciary duty of prudence (count 1), breach of the duty of loyalty (count 2), breach of fiduciary duty of co-fiduciaries (count 3), commission of prohibited transactions with parties in interest (count 5), and commission of prohibited transactions through self-dealing (count 6).  Plaintiffs assert one claim against Northeast Grocery, namely that it breached its fiduciary duty of prudence by failing to monitor the Committee and the performance of its duties (count 4).  Finally, Plaintiffs assert one claim against all Defendants, alleging a breach of fiduciary duty by omission (count 7).  The Complaint seeks plan-wide relief on behalf of all participants and beneficiaries[2] of "the Plan" from January 1, 2018 through the date of any judgment.  *Id.* ¶132.

ARGUMENT

A.    **Standard of Review**

   i.    **12(b)(1)**

Article III limits federal court jurisdiction to "Cases" and "Controversies."  U.S. Const. art. III, § 2, cl. 1.  There is no case or controversy where plaintiff lacks standing to sue.  *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 337–338 (2016).  To establish Constitutional standing, a

---

[2] Plaintiffs expressly exclude certain individuals from the Class such as the Defendants, officers, employees of Northeast Grocery, Tops, or Price Chopper and shareholders owning more than 5% of Northeast Grocery, Tops, or Price Chopper, and their children, judges of this Court and their spouses and children, Plaintiffs' counsel, and the legal representatives, heirs successors, and assigns of any excluded person.  Compl. ¶132.

plaintiff must demonstrate that he has suffered a concrete, particularized, and actual injury-in-fact, that such injury was caused by the conduct about which he complains, and that his injury will likely be redressed by a favorable decision from the Court. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560–561 (1992). The burden is on Plaintiffs to prove "the Court's jurisdiction by a preponderance of the evidence." *Singh v. Deloitte LLP*, 650 F. Supp. 3d 259, 264 (S.D.N.Y. 2023) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "[W]here jurisdictional facts are disputed, the Court has the power and obligation to consider matters outside the pleadings to determine whether jurisdiction exists." *Deloitte*, 650 F. Supp. 3d at 264. *See also Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986). If Plaintiffs lack standing and fail to carry their burden, the Court must dismiss the action for lack of subject-matter jurisdiction. *Makarova*, 201 F.3d at 113.

ii.      **12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), Plaintiffs must allege plausible facts that, if true, would entitle them to the specific relief they seek. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausible facts are facts that would permit the court to draw a reasonable inference that a defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts must construe the factual allegations in the light most favorable to Plaintiffs, a court is not required to accept legal conclusions couched as conclusory factual allegations. *Id*. Therefore, Plaintiffs cannot survive a motion to dismiss by merely pleading the relevant legal elements. *Zamora v. Fit Int'l Grp. Corp.*, 834 Fed. App'x 622, 629 (2d Cir. 2020) (citing *Iqbal*, 556 U.S. at 678). In analyzing whether a plaintiff has stated a plausible claim, courts "may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the

plaintiff knew of when bringing suit, or matters of which judicial notice may be taken." *Deloitte LLP*, 650 F. Supp. 3d at 265 (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).  In the ERISA context, courts will consider plan documents, incorporated by reference. *In re Bausch & Lomb, Inc. ERISA Litig.*, No. 06-CV-6297, 2008 U.S. Dist. LEXIS 106269, at *4 n.1 (W.D.N.Y. Dec. 12, 2008).

Given the rise of meritless ERISA claims designed to extort settlements, the Supreme Court has encouraged additional judicial scrutiny at the motion to dismiss stage.  *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014) (motions to dismiss are an "important mechanism for weeding out meritless [ERISA] claims."); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Centers Ret. Plan v. Morgan Stanley Investment Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013) ("*Pension*") (noting that the motion to dismiss is an important gatekeeping tool "to prevent settlement extortion" as the "prospect of discovery in a suit claiming breach of fiduciary duty is ominous, potentially exposing the ERISA fiduciary to probing and costly inquiries and document requests.").  Thus, when determining whether the traditional pleading standards under *Iqbal* and *Twombly* have been met, the court must afford fiduciaries' judgment a range of reasonableness and approach its analysis through a "context specific" inquiry.  *Hughes v. Northwestern Univ.*, 142 S. Ct. 737, 742 (2022); *see also Fifth Third Bancorp*, 573 U.S. at 425 (holding that the court's role in a motion to dismiss an ERISA claim is a "careful, context-sensitive scrutiny of a complaint's allegations" designed to "divide the plausible sheep from the meritless goats.").  Where a plaintiff fails to include well-pleaded factual allegations that a defendant failed to utilize a prudent process in administering an employee benefit plan, a court must conduct a rigorous analysis of the plaintiff's circumstantial allegations to determine whether it can draw a reasonable inference that the process was flawed.

*Ferguson v. Ruane Cunniff & Goldfarb Inc.*, No, 17-cv-6685 (ALC), 2019 U.S. Dist. LEXIS 160112, at *10 (S.D.N.Y. Sep. 18, 2019).  If, however, the court's analysis suggests that those allegations are merely consistent with a plaintiff's theory but are also consistent with lawful behavior, dismissal is warranted.  *White v. Chevron Corp.*, 752 Fed. App'x 453, 454 (9th Cir. 2018), *cert denied*, 139 S. Ct. 2646 (2019); *see also*, *Iqbal*, 556 U.S. at 678–79, 682.

### B.    Plaintiffs Lack Standing to Pursue Claims Regarding Funds in Which They Did Not Invest and for Which They Did Not Pay Fees

Plaintiffs' claims must be dismissed as to ten of the eleven challenged funds, as Plaintiffs have failed to establish that they have standing to pursue those claims.  "There is no ERISA exception to Article III" standing requirements.  *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1622 (2020).  As noted above, to establish Article III standing, Plaintiffs must show that they suffered an injury as a result of the conduct complained of and that such injury will likely be redressed by a favorable decision from the Court.  *Lujan*, 504 U.S. at 560-61; *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016) (quoting *Lujan*, 504 U.S. at 560–61).  An injury in fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Am. Psychiatric Ass'n*, 821 F.3d at 358.  A plaintiff must satisfy Article III's standing requirement for each claim and/or type of relief sought.  *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *Antoine v. Marsh & McLennan Co.*, No. 22-CIV-6637 (JPC), 2023 U.S. Dist. LEXIS 176561, at *17 (S.D.N.Y. Sept. 30, 2023).

Plan participants do not have standing to pursue ERISA claims unless the participant has faced an actual injury.  *Taveras v. UBS AG*, 612 F. App'x 27, 29 (2d Cir. 2015); *Thole,* 140 S. Ct. at 1620 (rejecting argument that ERISA allows plaintiffs to "assert standing as representatives of the plan itself" or otherwise affords a "general cause of action to sue for restoration of plan losses and other equitable relief.").  Where a participant does not invest in a

fund, there is no actual injury as that fund's performance, and therefore any alleged misconduct relating to it, could not affect the value of the participant's actual plan benefit. *Deloitte LLP*, 650 F. Supp. 3d at 265 (quoting *In re Omnicom ERISA Litig.*, No. 20-cv-4141 (CM), 2021 U.S. Dist. LEXIS 144054, at *26 (S.D.N.Y. Aug. 2, 2021)).  For the same reason, a participant does not suffer harm from allegedly excessive fees in funds in which the participant has not invested. *Boyette v. Montefiore Med. Ctr.*, No. 22-cv-5280 (JGK), 2023 U.S. Dist. LEXIS 203442, at **11–12 (S.D.N.Y. Nov. 13, 2023).  Accordingly, courts in this circuit routinely dismiss claims relating to challenged funds in which no plaintiff has specifically alleged investment.  *See e.g., Taveras*, 612 F. App'x at 29; *Boyette,* 2023 U.S. Dist. LEXIS 203442, at *13; *Deloitte LLP*, 650 F. Supp. 3d at 265.

Here, Plaintiffs have failed to allege that they invested in any of the challenged funds with the exception of the Blue Chip Fund and, accordingly, they have not and cannot allege that they suffered any injury in fact in connection with the remaining ten funds.  Thus, of the eleven funds Plaintiffs identify in the Complaint, the only fund which any of the Plaintiffs have standing to challenge is the Blue Chip Fund in which two of the Plaintiffs have alleged to have invested.  *See* Compl. ¶15 (Plaintiff G. Collins); *id.* ¶ 17 (Plaintiff S. Lobdell).  The remaining two Plaintiffs merely allege in conclusory fashion that they "invested in one or more of the funds discussed below." *See id*. ¶16 (Dean DeVito); *id.* ¶ 18 (Plaintiff M. Lamoreux).  This conclusory allegation is insufficient to create standing for Plaintiffs DeVito and Lamoreux, particularly where the identity of funds in which they have invested is readily known by and/or available to them.  *See Baur v. Veneman*, 352 F.3d 625, 636–37 (2d Cir. 2003) ("While the standard for reviewing standing at the pleading stage is lenient, a plaintiff cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing."); *Pension*, 712

F.3d at 723 (noting that where plaintiffs have access to information and reports concerning their investments, they have the necessary information to plead with precision).

C.    **The Complaint Fails to State Any Plausible Claims of Fiduciary Breach of Prudence**

To state a claim for breach of the fiduciary duty of prudence, Plaintiffs must plausibly allege that Defendants failed to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).  Assessing a fiduciary's prudence requires an objective analysis based upon the information available to the fiduciary at the time of the decision and not through the lens of hindsight.  *Pension*, 712 F.3d at 716.  As such, the analysis focuses on a fiduciary's conduct and whether the decision resulted from an appropriate investigation and decision-making process, not the decision's results.  *Id.*  "In other words, courts analyze a fiduciary's process to determine prudence, not outcome."  *Ferguson*, 2019 U.S. Dist. LEXIS 160112, at *14.

Here, Plaintiffs have failed to adequately plead any deficiencies in the Committee Defendants' process.  *See, e.g.*, Compl. ¶¶ 26, 28, 35–37, 39, 41–43, 46, 50–58, 60, 70–79, 83, 84, 94, 95, 104, 106, 108–115, 120, 121.  Where a plaintiff fails to properly plead a flawed process, a complaint may only stand if the court can draw a reasonable inference that based on the circumstantial allegations, the fiduciary's process was flawed.  *Ferguson*, 2019 U.S. Dist. LEXIS 160112, at *10.  Thus, plaintiffs cannot survive a motion to dismiss by simply pleading allegations of poor results alone.  *Boyette*, 2023 U.S. Dist. LEXIS 203442, at *19.  Where there are two possible explanations for a fiduciary's action, only one of which results in liability, allegations that are consistent with an alternative explanation are insufficient.  *See Twombly*, 550 U.S. at 567; *Roe v. St. John's Univ.*, 91 F.4th 643 (2d Cir. 2024); *Pension*, 712 F.3d at 719

("[C]ourts may draw a reasonable inference of liability when the facts alleged are suggestive of, rather than merely consistent with, a finding of misconduct." (quoting *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 121 (2d Cir. 2013))).

Plaintiffs ask this Court to draw a reasonable inference that the process employed by the relevant committees must have been flawed based on Plaintiffs' allegations regarding the performance of a handful of funds and selection of particular share classes spread between the various plans. Specifically, Plaintiffs allege that the Committee (without specifying which plan or committee) breached its duty by failing to timely remove certain funds, *see, e.g.*, Compl. ¶¶ 44–58, failing to select the lowest cost share classes available for certain funds, *see, e.g.*, *id*. ¶¶ 29–43, and paying recordkeeping fees that, on average, were excessively high, *see, e.g.*, *id*. ¶¶ 85–121. None of these alleged facts are sufficient for this Court to reasonably draw an inference of an imprudent process.

i.     **Plaintiffs' Allegations that Certain Better Performing Funds Were Available are Insufficient to Create a Plausible Inference of Imprudence**

Plaintiffs allege that the Committee acted imprudently in failing to timely remove certain funds and replace them with better performing funds. *Id*. ¶¶ 53, 66, 71. Though their allegations are difficult to follow, Plaintiffs appear to identify three funds that they believe should have been removed for underperformance (the Fidelity Freedom TDFs, the Loomis Value fund, and the Blue Chip fund), two of which (the Fidelity TDFs and the Loomis Value Fund) they have not alleged investment in and therefore, as explained above, lack standing to challenge.

To state a claim for breach of the fiduciary duty of prudence, Plaintiffs must plausibly allege that "a prudent fiduciary in the defendant's position could not have" made the same decision. *Fifth Third Bancorp*, 573 U.S. at 429-30. This requires "*non-conclusory* factual

content raising a *plausible* inference of misconduct and does not rely on the vantage point of

hindsight." *Pension*, 712 F.3d at 718 (emphasis in original) (internal quotation marks and

citations omitted).  A showing that better investment opportunities were available is not

necessarily sufficient, as ERISA does not require a fiduciary "to scour the market to find and

offer the cheapest possible fund." *Id.* at 718 (citation omitted); *accord Ferguson*, 2019 U.S.

Dist. LEXIS 160112, at *30.  Fiduciaries are not per se imprudent by selecting a particular fund,

even if that fund has higher fees.  *See Ferguson*, 2019 U.S. Dist. LEXIS 160112, at *31.   Nor

are fiduciaries imprudent for providing plan participants with a variety of investment options

with different risks, investment management styles, and features, regardless of whether some

perform better than others.  *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1169 (6th Cir. 2022).

A fund's performance, standing alone, does not dictate whether the process to select that fund

was imprudent.  *Id.* at 1167.

 At the pleading stage, Plaintiffs must provide an apples-to-apples comparison of a fund's

performance to support a reasonable inference of imprudence.  *See Wehner v. Genentech, Inc.*,

No. 20-cv-06894-WHO, 2021 U.S. Dist. LEXIS 111341, at *26 (N.D. Cal. June 14, 2021)

(stating that "factual allegations that compare the products' styles and strategies" are required for

the Court to make an appropriate comparison).  Funds with "distinct goals and distinct

strategies" are "inapt comparators."  *Smith*, 37 F.4th at 1167.  The benchmark must be

"meaningful" and Plaintiffs cannot plead around this requirement by merely pointing the Court

to a couple of examples of less expensive similar funds.  *Meiners v. Wells Fargo & Co.*, 898

F.3d 820, 823 (8th Cir. 2018).  Absent a meaningful benchmark, there is no way to compare

whether the decision to select one fund could be better or worse than the other.  *Anderson v. Intel*

*Corp. Inv. Policy Comm.*, 579 F. Supp. 3d 1133, 1148 (N.D. Cal. 2022) (noting that without a meaningful benchmark any comparison is "apples and oranges").

Notwithstanding the fact that none of the Plaintiffs have alleged that they invested in it, Plaintiffs assert that it is reasonable to infer that the Fidelity Freedom 2030 Fund performed poorly and that the Committee's process was imprudent for failing to identify the fund as a poor performer based on (i) public information about the fund's performance and (ii) the "batting average" of its portfolio manager.  Compl. ¶ 53–58, 61, 62.  Neither of these allegations are sufficient.  First, Plaintiffs rely on a comparison between the Fidelity Freedom 2030 Fund and the T. Rowe Price Retirement 2030 fund for both of these points without alleging any facts sufficient to allow the Court to determine whether the funds have "similar aims, risks, and potential rewards[.]"  *Anderson*, 579 F. Supp. 3d at 1148 (quoting *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 485 (8th Cir. 2020) (quotation and alteration marks omitted)).  Plaintiffs also make no allegations questioning the performance of any of the other funds in the Fidelity TDF series, or comparing the series as a whole to appropriately similar potential alternatives.[3]

For the Loomis Value Fund, Plaintiffs assert the Committee's process was flawed based on the fact that the portfolio manager's 47% "batting average" was lower than the "batting average" that Plaintiffs ascribe to the S&P 600 small company index (51%) and the Russell 2000 index (56%).  It is unclear how Plaintiffs arrived at their "batting average" figures for the indices of what those figures mean, since Plaintiffs state that a "batting average" measures a "portfolio manager's ability to beat the relevant market" and this definition obviously is not apposite to indices that Plaintiffs appear to be using to represent the market.  If Plaintiffs' intention is to

---

[3] Given that none of the Plaintiffs have asserted that they invested in the Fidelity TDFs at all, let alone in the Fidelity Freedom 2030 Fund in particular, the exclusive focus on that particular target date and fund is perplexing.

assert that the Loomis Value Fund failed to outperform various indices, and that at least one of

those indices was the index identified by the fund's prospectus as its intended benchmark, the

allegation is still insufficient.  *See Smith,* 37 F.4th at 1167 (dismissing breach of duty claims

where allegations of breach were premised on Plan's "offering several actively managed

investment funds when index funds available on the market offered higher returns and lower

fees.").  Moreover, the mere fact that a manager does not exceed the performance of an index

over particular intervals of time does not give rise to a reasonable inference that the process used

to select that manager's fund is imprudent.  *Id*.

As to the Blue Chip Fund, Plaintiffs simply allege that the manager "had never proven an

ability to consistently and substantially earn his fee each year versus his 'appropriate broad-

based securities market index'" and that the fund lost over 4% per year since 2018 based on the

geometric mean.  Compl. ¶¶ 68.  First, there is no legal requirement that a manager must always

outperform a market by a margin greater than his or her fee in order for the selection and

ongoing offering of the fund to qualify as prudent; such a requirement would be impossible to

satisfy.  Second, as the Second Circuit has recognized, allegations that a particular investment's

value decreased, without more, is insufficient to plausibly allege that the investment decision

was imprudent before, during, or after the decline.  *Pension*, 712 F.3d at 727 ("In other words, a

decline in a security's market price does not, by itself, give rise to a reasonable inference that

holding that security was or is imprudent.").

As Plaintiffs have failed to allege sufficient facts to support an inference that the alleged

underperformance of certain investments would have caused a reasonably prudent fiduciary to

remove the challenged funds, Plaintiffs' claims against these funds should be dismissed.

ii.     **Plaintiffs' Allegations Concerning Defendants' Selection of Share Classes are Insufficient to Create a Plausible Inference of Imprudence**

In vague and conclusory fashion, Plaintiffs broadly allege that the Committee breached its fiduciary duty of prudence by failing to switch the share classes of investments for three funds. Specifically, they allege that the T. Rowe Price Retirement Trust "A" target date series, the Loomis *Value* Fund, and the Loomis *Growth* Fund offered share classes that were less expensive, and (in some cases) produced higher yields than the Committee's selected shares. Compl. ¶¶ 36, 37. Plaintiffs have not alleged investment in any of these challenged funds, and even if they did make such investments, they have not alleged a plausible claim.

Allegations that lower cost share classes were available are not sufficient, in and of themselves, to give rise to an inference of imprudence or to state a claim for breach of fiduciary duty. *Ferguson*, 2019 U.S. Dist. LEXIS 160112, at *19. The "prudence of each investment is not assessed in isolation, but rather, as the investment relates to the portfolio as a whole." *Pension*, 712 F.3d at 717. This is because a prudent fiduciary may have contextual reasons to offer a more expensive share class over another. *Sacerdote v. N.Y. Univ.*, No. 16-cv-6284 (KBF), 2017 U.S. Dist. LEXIS 137115, at **32–33 (S.D.N.Y. Aug. 25, 2017). Thus, while a plaintiff can survive a motion to dismiss by alleging the selection of higher priced share classes in fewer than all of the fund options, plaintiffs' non-conclusory allegations must support a reasonable inference that the Plan was tainted as a whole by the questioned selection. *See Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 109 (2d. Cir. 2021) ("Sacerdote II") (determining that plausible allegations that a committee selected higher priced class shares for 63 funds out of 103-fund and 84-fund plans was sufficient to plead that the plan was tainted). Here, Plaintiffs' conclusory challenge to *three* funds, out of a total of at least twenty-eight, does not support that inference, particularly where Plaintiffs admit one of the three funds was removed. Compl. ¶ 37.

First, with regards to the T. Rowe Price Retirement Trust "A," Plaintiffs fail to allege that the share classes were identical aside from cost.  Instead, Plaintiffs assert that it is reasonable to infer that the Committee did not investigate lower cost identical share classes merely because lower cost share classes existed and the Committee did not select them.  *Id*. ¶ 36.  This pleading strategy has been soundly rejected.  *Ferguson*, 2019 U.S. Dist. LEXIS 160112, at \*19 ("[A]llegations that the Plan included high-cost share classes of investment options when lower-cost share classes of those same investment options were available . . . do not, as a matter of law, support an inference of a flawed fiduciary process.").

Second, as to the Loomis Cap *Value* Fund, Plaintiffs appear to assert that "[t]he only difference between the two share classes was a higher price and lower returns." Compl. ¶ 39. However, Plaintiffs' own allegations concede that the Committee switched to the lower cost share class in 2017.  Not only does this concession make clear that the Statute of Limitations has expired for this particular claim as discussed below, Plaintiffs' allegations contradict their own argument that the Committee's process as a general matter did not consider alternative share classes.  *Id.* ¶ 38.  The Committee's decision to change share classes forecloses any inference that the process was tainted for the Plan as a whole.  *Smith*, 37 F.4th at 1169 (Allegations showing that Plan removed a certain fund "does not help [Plaintiff]" rather "[i]t simply shows that [the Committee] fulfilled its continuing duty to monitor trust investments and remove imprudent ones." (internal quotations and citations omitted)).

With respect to the Loomis Growth Fund, Plaintiffs again fail to clearly explain whether the share classes, though potentially different in price, offered different advantages.  By way of example, Plaintiffs expressly acknowledge that a portion of the cost of the share class at issue was rebated to the plan, thus reducing or potentially eliminating the asserted economic

differences when viewed solely through the lens of a pricing comparison.  Compl. ¶ 40.

Plaintiffs' allegations fall far short of supporting an inference of imprudence.

Plaintiffs' challenges to the selection of share classes for three funds in which Plaintiffs

have not alleged they invested fall short of creating any inference of imprudence with respect to

the administration of the Plan.

### iii.     Plaintiffs' Allegations Concerning the Propriety of the Plan's Recordkeeping Fees Do Not Raise Any Plausible Inference of Imprudence

Plaintiffs also allege that the Defendants have breached their fiduciary duties by paying

excessive recordkeeping fees.  *See, e.g.*, *id*. ¶¶ 85–121.  The premise of Plaintiffs' claim is that

the Committee's process must have been imprudent because several other plans appear to have

paid less in fees.  *See, e.g.*, *id*. ¶¶ 97–101.  Plaintiffs then ask the Court to draw a corresponding

inference that if the fees paid by the Plan were not the lowest fees, the necessary conclusion is

that Committee failed to act with prudence.  *Id*. ¶ 164.

To survive a motion to dismiss, Plaintiffs must show the fees are excessive in relation to

*specific services* provided to the *specific* plan.  *Cunningham v. USI Ins. Servs., LLC*, No. 21 Civ.

1819 (NSR), 2023 U.S. Dist. LEXIS 220905, at *17 (S.D.N.Y. Dec. 11, 2023).  Fees are only

one part of the equation, and courts require that plaintiffs allege sufficient facts, based on

appropriate comparators, to support the premise that another similarly sized plan could receive

and provide to its participants similar services at a lower cost.  *Id.*  Essentially, Plaintiffs need to

allege that the same "basket of services" for each plan whose fees they are challenging was

"available for less on the market."  *Id.* at *20; *Deloitte LLP*, 650 F. Supp. 3d at 267 (dismissing

excessive fee claims where plaintiffs' comparison was not "apples to apples.").

Here, Plaintiffs assert in conclusory fashion that the Plan's recordkeeping fees are

significantly higher than those paid by "similarly sized plans."  Plaintiffs refer to a list of plans

and related fees while omitting facts on which the Court could plausibly conclude that the comparison has any relevance. Compl. ¶ 101. Plaintiffs do not adequately describe the services offered by any of these other plans or allege that the services provided are comparable to those provided to participants in this Plan. *Id.*; *Cunningham*, 2023 U.S. Dist. LEXIS 220905, at**18-19. Nor do Plaintiffs plead facts allowing the Court to compare plan sizes, participant numbers, average balances, or other relevant factors. It appears that the only proffered basis for Plaintiffs' selection of comparators is the simple fact they are also plans provided by grocery or convenience stores. In addition, Plaintiffs fail to allege how much they believe they paid in recordkeeping fees from their personal plan accounts to permit this Court to determine if the fees they paid were excessive in view of the comparator plans referenced in the Complaint. *See e.g., O'Driscoll v. Plexus Corp.*, No. 20-C-1065, 2022 U.S. Dist. LEXIS 150844, *15 (E.D. Wis. Aug. 22, 2022) (dismissing claims where fees paid by plaintiff were below the cost that plaintiff identified was reasonable.).

Plaintiffs also argue that the Plan's fiduciaries should have been able to negotiate lower fees given the Plan's size. However, Plaintiffs have staked their effort to show that total fees were too high by comparing the plans' alleged fees to the asserted fees paid by an unidentified Molson plan in 2021, which as Plaintiffs admit, has roughly double the asset size of either the Price Chopper or the Tops plan and also differs in terms of participant count. *Compare* Compl. ¶ 98 (Molson Plan 2021 $476,920,040) *with id.* ¶ 12 (Tops Plan 2021 $183,430,278) *and id.* ¶ 11 (Price Chopper Plan 2021 $272,420,470). Moreover, the only comparisons of services between the two plans are vague references to high level Form 5500 service codes. Thus, the Molson plan comparison fails to meet this burden.

In addition, Plaintiffs allege that the Committee breached its fiduciary duty by entering into revenue sharing agreements as opposed to per participant flat-fee arrangements. *See, e.g.*, *id*. ¶¶ 92–95, 104.  This argument fails.  The use of revenue-sharing and/or asset-based fee arrangements is not improper. *See, e.g.*, *Rosen v. Prudential Ret. Ins. & Annuity Co.*, 718 Fed. App'x 3, 6 (2d Cir. 2017) ("Fee-sharing arrangements between service providers and third party managers 'do not in-and-of-themselves create a violation' of ERISA.").  In fact, courts routinely find that revenue-sharing is a prudent and common choice to pay recordkeeping fees. *See e.g.,* *Terraza v. Safeway, Inc.*, 241 F. Supp. 3d 1057, 1081 n.8 (N.D. Cal. 2017) ("[C]ourts have noted that revenue sharing is a 'common and acceptable investment industry practice[] that frequently inure[s] to the benefit of ERISA plans.'").  Plan fiduciaries whose plans have many small accounts (such as the Plan) sometimes prefer asset-based fees under which participants pay a percentage-based/proportionate fee dependent on the assets in their accounts over flat per-participant fees because such arrangements have less impact on lower-paid employees with smaller account balances.

Because Plaintiffs have failed to adequately allege facts in support of a plausible inference that the Plan's recordkeeping fees are excessive compared to similar plans and services or that its use of revenue sharing and/or asset-based fees was improper, Plaintiffs' duty of prudence claims (Counts 1 and 3) should be dismissed.

### D.    Plaintiffs Fail to Plausibly State a Claim for Breach of the Fiduciary Duty of Loyalty

Plaintiffs next allege that the Committee breached its duty of loyalty by engaging in unidentified prohibited transactions. *See* Compl. ¶¶ 187–209.  Plaintiffs allege no facts that, even if assumed as true, would allow a reasonable inference that said transactions occurred, let

18

alone give rise to a plausible inference that the Committee breached its duty of loyalty.  Instead,

Plaintiffs restate the allegations that they relied on as support for their duty of prudence claims.

Blackletter law dictates that the duties of loyalty and prudence are different, and plaintiffs

must plead separate facts that support a breach of duty of loyalty.  *Ferguson v. Ruane Cunniff &*

*Goldfarb Inc.*, No. 17-cv-6685 (ALC), 2019 U.S. Dist. LEXIS 160112, at *13 (S.D.N.Y.

Sept. 18, 2019) (dismissing plaintiffs' breach of duty of loyalty claims because they were

"impermissibly intertwined with their prudence claims" and there were "no separate allegations

purporting to support them."); *see also Sacerdote*, 2017 U.S. Dist. LEXIS 137115, at *14 ("To

state a loyalty-based claim under ERISA . . ., a plaintiff must do more than simply recast

purported breaches of the duty of prudence as disloyal acts." (alterations omitted)).  The

fiduciary duty of loyalty is designed to prevent actions that, whether prudent or not, are not

undertaken solely in participants' best interests.  *Cunningham v. Cornell Univ.*, 86 F.4th 961, 973

(2d Cir. 2023).  Offering imprudent investment funds in and of itself is not a breach of the duty

of loyalty.  If it were, every breach of fiduciary duty of prudence claim would necessitate a

corresponding breach of fiduciary duty of loyalty claim.  *In re DeRogatis*, 904 F.3d 174, 194

n.25 (2d Cir. 2018) ("[D]uty of prudence imposes a different kind of guardrail" than "the duty of

loyalty.").  Accordingly, courts routinely dismiss duty of loyalty claims where the claim is

entirely based on a breach of the duty of prudence.  *See, e.g.*, *Ferguson*, 2019 U.S. Dist. LEXIS

160112, at *13; *Sacerdote*, 2017 U.S. Dist. LEXIS 137115, at *18.

Plaintiffs attempt to ground a breach of loyalty claim on the alleged occurrence of

prohibited transactions but utterly fail to demonstrate that any prohibited transactions occurred.

To adequately allege a claim regarding prohibited transactions, Plaintiffs must plausibly allege

that (1) "the defendant is a fiduciary," (2) "the defendant caused the plan to engage in one of the

prohibited transactions set forth in [29 U.S.C. § 1106(a)(1)]," (3) "the transaction was between the plan and a party in interest . . . or involved plan assets," and (4) "the defendant knew or should have known that the transaction was prohibited." *Sacerdote*, 2017 U.S. Dist. LEXIS 137115, at *13.  To plead a violation of § 1106(a)(1)(C), the plaintiff must "plausibly allege that a fiduciary has caused the plan to engage in a transaction that constitutes the 'furnishing of . . . services . . . between the plan and a party in interest' where that transaction was unnecessary or involved unreasonable compensation." *Cunningham*, 86 F.4th at 975 (alterations omitted).

Plaintiffs contend that the Committee's failure to remove allegedly imprudent funds constituted a "direct or indirect . . . (C) 'furnishing of goods, services, or facilities between the plan and a party in interest; or (D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan and a party in interest.'"  Compl. ¶ 192; 29 U.S.C. § 1106(a).  Even assuming that the funds were imprudent and should have been removed, Plaintiffs do not allege facts demonstrating what was used, furnished, or transferred for the benefit of the Committee or any other party in interest. Plaintiffs' 1106(b) claim fails for the same reason.  Plaintiffs allege in conclusory fashion that the "inclusion of and failure to remove the imprudent funds from the Plan described above resulted from the [sic] their 'deal[ing] with the assets of the plan in [their] own interest.'"  Compl. ¶ 198.  This is merely a restatement of Plaintiffs' breach of prudence claim.  *See, e.g.*, *id*. ¶¶ 164, 165.

Even if it were not, this claim would fail as a matter of law.  Plaintiffs allege that the Committee selected those funds to earn profit for recordkeepers through revenue-sharing, which flowed back to the Committee through an alleged kickback.  First, this conclusory reference to "revenue sharing" and "kickback arrangements" is insufficient.  *Patrico v. Voya Fin., Inc.*, 2018 U.S. Dist. LEXIS 41157, at *18 (S.D.N.Y. Mar. 13, 2018) (denying motion for leave to amend

complaint as futile as the [Complaint's] "unsupported allegation that [investment advisor] sought

to obtain a prohibited kickback for [defendant] likewise is insufficient" could not survive a

motion to dismiss). Moreover, revenue sharing payments are not "assets of the plan" and

therefore any payment is not a prohibited transaction under 1106(b). *Cunningham* is instructive.

There, the court dismissed breach of fiduciary duty of loyalty claims based on allegations that

defendants engaged in prohibited transactions by overcompensating recordkeepers via revenue-

sharing:

> Essentially, plaintiffs argue that by entering into contractual
> agreements with TIAA-CREF and Fidelity, defendants caused the
> Plans to engage in prohibited transactions each time the Plans paid
> fees to TIAA-CREF and Fidelity. Plaintiffs' claims under section
> 406(a)(1)(A) and (D) fail because revenue sharing payments drawn
> from mutual fund assets and paid to TIAA-CREF and Fidelity are
> not transactions involving plan assets, and payments for
> recordkeeping services do not constitute an impermissible "sale or
> exchange" of property as that term is commonly understood.

*Cunningham v. Cornell Univ.*, No. 16-cv-6525 (PKC), 2017 U.S. Dist. LEXIS 162420

at ** 27-28 (S.D.N.Y. Sep. 29, 2017).

The court further elaborated that prohibited transactions require some evidence of self-

dealing or other disloyal conduct. "Offer[ing] only conclusory allegations suggesting self-

dealing or disloyal conduct" as Plaintiffs have done here is insufficient. *Id.* at *29.

Likewise, in *Rosen*, the Second Circuit affirmed a dismissal of claims with prejudice that

alleged prohibited transactions similar to the ones alleged here, on the basis that the complaint

merely "rehearse[d] the statutory definitions of prohibited transactions and attache[d] them to

allegations of unlawful revenue-sharing." *Rosen*, 718 Fed. Appx. at 7 ("[S]uch 'threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice.'"). There, like here, the plaintiffs failed to distinguish between ordinary compensation

for services in the form of revenue-sharing payments and illicit kickbacks. Accordingly,

Plaintiffs' breach of the duty of loyalty (Count 2) and prohibited transaction claims (Counts 5 and 6) should similarly be dismissed with prejudice.

> **E.** **Plaintiffs' Breach of Fiduciary Duty By Omission Claim Fails as Plaintiffs Have Not Identified Any Transactions the Defendants Allegedly Should Have Pursued.**

Plaintiffs' failure to identify any "prohibited transactions" also dooms their breach by omission claim.  Once again, Plaintiffs have attempted to use "buzzwords" from the ERISA statute and caselaw to plead around the more stringent ERISA motion to dismiss requirements without any factual support.  *Tibble v. Edison Int'l*, 639 F. Supp. 2d 1122, 1127 (C.D. Cal. 2009), *vacated on other grounds*, 575 U.S. 523 (2015).

Plaintiffs allege that the Defendants breached their fiduciary duty by omission for failing to bring an action against themselves, on behalf of the Plan, for engaging in unidentified prohibited transactions.  Compl. ¶¶ 210–222.  Yet, there can be no breach based on failing to bring an action, unless there was an action to bring.  And as explained above, the Plaintiffs have not plausibly identified any prohibited transactions.  Thus, Plaintiffs' claims for breach of fiduciary duty by omission (Count 7) fail as a matter of law.

> **F.** **Plaintiffs' Failure-to-Monitor Claim Fails as There Is No Plausible Claim of Fiduciary Breach**

As a preliminary matter, Plaintiffs' failure to monitor claim is asserted against Northeast Grocery, Inc. on the flawed premise that Northeast Grocery, Inc. appointed individuals to serve on the Committee and thus had a duty to monitor the Committee.  As the Plan document makes clear, however, Northeast Grocery, Inc. does not appoint the members of the Committee and is not a Plan fiduciary.  *See* Declaration of Erika N.D. Stanat ("Stanat Decl."), Ex. A at 48-49.  Accordingly, Northeast Grocery, Inc. is not a proper defendant in this action and the claims against it must be dismissed.

Even if Northeast Grocery, Inc. were a proper defendant, Plaintiffs' claim for "failure to monitor" would still fail for the same reason their breach of fiduciary duty claims fail. There is no breach of the duty to monitor absent an underlying breach of an ERISA duty. *Rinehart v. Lehman Bros. Holdings, Inc.*, 817 F.3d 56, 68 (2d Cir. 2016) (dismissing a breach of duty of monitor claim where plaintiffs did not plausibly allege underlying breach of an ERISA duty).

As the Plaintiffs have failed to adequately allege that Defendants breached any fiduciary duties under ERISA, their monitoring claim (Count 4) must also be dismissed.

### G. Plaintiffs' Failed to Exhaust Their Claims as Required by the Plans

Even if Plaintiffs have alleged plausible claims, for funds they have standing to pursue, their failure to plead exhaustion of the administrative process requires dismissal of their claims. The Second Circuit has recognized "the firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases." *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993).

The enforcement of exhaustion requirements is important in the ERISA context as it not only reduces the number of frivolous suits and allows for a less costly settlement process for all parties, but it also provides a clearer record for the court if litigation is ultimately necessary. *Id.* at 594. While the Second Circuit has not expressly decided whether exhaustion is required prior to bringing a breach of fiduciary duty claim, courts in other circuits routinely dismiss claims where plaintiffs have failed to plead that they have exhausted their administrative remedies. *See, e.g.*, *Bickley v. Caremark Rx, Inc.*, 461 F.3d 1325 (2d Cir. 2006).[4]

---

[4] While some courts have declined to apply the judicial exhaustion requirement beyond claims arising under 29 U.S.C. § 1132(a)(1)(B), the Plaintiffs in this case are also subject to a contractual exhaustion requirement that they failed to satisfy. *See Plan* ("The claimant must exhaust all of his/her remedies under the Plan's claims procedures in order to be entitled to file suit or demand arbitration because of a claim denial." In the event of a claim brought without exhaustion of administrative remedies, "the Plan, Administrator and/or Employer (as applicable)

Exhaustion is particularly important here where Plaintiffs conflate funds and recordkeeping fees across a seven-year period, involving three different plans and committees, all without adequately specifying which challenged fees are applicable to which challenged funds under which plans, selected by which committees.  Instead, it appears the Plaintiffs attribute all of these actions to the Northeast Grocery Plan and Committee, despite not alleging that the funds they invested in were ultimately selected or retained by that Committee.  Thus, not only is exhaustion the efficient way to examine the merits of Plaintiffs' claims, it is essential for construction of a coherent record that will allow the Court to evaluate any claims Plaintiffs ultimately seek to pursue.  *Fifth Third Bancorp*, 573 U.S. at 425.  Accordingly, even if Plaintiffs have alleged a plausible claim, this Court should require Plaintiffs to first exhaust their administrative remedies before proceeding with litigation.

### H.    Plaintiffs' Claims are Barred by the Statute of Limitations

Lastly, Plaintiffs' claims are untimely.  Plaintiffs' allegations are based on information that has been readily available to them for at least three years.  Indeed, Plaintiffs' argument that the Committee's process was flawed relies on the fundamental premise that the cited performance and record-keeping data was available and allegedly ignored.

Pursuant to the Plan, a participant must file a lawsuit "within 90 days of the date he/she knew (or should have known) that the Administrator disagreed with his/her position regarding benefits under the Plan or some other matter involving the Plan."  Stanat Decl., Ex. A at 48.

---

will be entitled to have the court or arbitrator dismiss the claim because the claimant failed to exhaust administrative remedies as required.").  Courts have recognized and enforced a variety of dispute resolution procedures specified in plan documents.  *See e.g.*, *Bird v. Shearson Lehman/Am. Express*, 926 F.2d 116, 122 (2d Cir. 1991) (enforcing arbitration provision in agreement governed by ERISA); *Klotz v. Xerox Corp.*, 519 F. Supp. 2d 430, 435 (S.D.N.Y. 2007) ("[t]he vast majority of district courts have enforced forum selection clauses in ERISA plans.").

Notably, "a cause of action accrues when a claimant knows (or in the exercise of reasonable diligence should know) . . . the objected-to facts about the investment." *Id.* As the information on investment performance and record-keeping data was available to Plaintiffs for the last three years, Plaintiffs claims are untimely.

Contractual provisions establishing a limitation period where there is no controlling statute to the contrary are routinely enforced. *See Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 106–107 (2013). This is true even in the ERISA context, where courts have enforced a plan's express statute of limitations to dismiss breach of fiduciary duty claims. *See, e.g.*, *Hewitt v. W. & S. Fin. Grp. Flexible Benefits Plan*, No. 17-5862, 2018 U.S. App. LEXIS 9829, at *3 (6th Cir. Apr. 18, 2018); *Tawater v. Health Care Serv. Corp.*, No. CV 18-47-GF-BMM, 2018 U.S. Dist. LEXIS 204309, at **8–9 (D. Mont. Dec. 3, 2018).

In addition to the untimeliness of Plaintiffs' claims under the terms of the Plan, their claims are also untimely under ERISA. ERISA requires legal actions to be brought within three years after the earliest date on which the Plaintiffs had knowledge of the breach or violation, or "six years after [] the date of the last action which constituted a part of the breach or violation." 29 U.S.C. § 1113(1). Plaintiffs' allegations are based on performance indicators available to them more than 3 years prior to the filing of this suit. Accordingly, either under the Plan's limitation or ERISA's, the claims must be dismissed as untimely.

## CONCLUSION

Plaintiffs have not alleged investment in and therefore lack standing to pursue claims relating to ten of the eleven funds. For the remaining fund, their allegations do not permit this court to draw a reasonable inference that the Committee's decision-making process was flawed or that any Defendant otherwise breached its fiduciary duties. Accordingly, Plaintiffs' claims should be dismissed with prejudice.

Dated: March 4, 2024
        Buffalo, New York                          Harter Secrest & Emery LLP


                                            By:  /s/ Erika N.D. Stanat
                                                 Erika N.D. Stanat, Esq.
                                                 Michael-Anthony B. Jaoude, Esq.
                                                 Franco A. Mirolo, Esq.
                                                 *Attorneys for Defendants Northeast*
                                                 *Grocery, Inc.; The Administrative*
                                                 *Committee of the Northeast Grocery, Inc.*
                                                 *401(k) Savings Plan; John and Jane Does*
                                                 *1-30 in their capacities as members of the*
                                                 *Administrative Committee*
                                                 1600 Bausch and Lomb Place
                                                 Rochester, NY 14604-2711
                                                 Telephone:  585.231.1161
                                                 Email:  estanat@hselaw.com
                                                 Email:  mjaoude@hselaw.com
                                                 Email:  fmirolo@hselaw.com

To:  Peter W. Till, Esq.
     Law Offices of Peter W. Till
     *Attorneys for Plaintiffs*
     105 Morris Avenue
     Springfield Township, NJ 07081
     Email:  pwt@till-law.com
     Telephone:  (973) 258-0064

     Paul J. Sharman, Esq.
     *Attorneys for Plaintiffs*
     The Sharman Law Firm LLC
     11175 Cicero Drive, Suite 100
     Alpharetta, GA 30022
     Email:  paul@sharman-law.com
     Telephone:  (678) 802-2129

26