**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
**ALBANY DIVISION**

| | |
|---|---|
| **GAIL COLLINS, DEAN DEVITO, MICHAEL LAMOUREUX, and SCOTT LOBDELL** individually, on behalf of the Northeast Grocery, Inc. 401(k) Savings Plan and on behalf of all similarly situated participants and beneficiaries of the Plan, <br><br>     **Plaintiffs,** <br><br> v. <br><br> **NORTHEAST GROCERY, INC.; THE ADMINISTRATIVE COMMITTEE OF THE NORTHEAST GROCERY, INC. 401(k) SAVINGS PLAN; John and Jane Does 1-30** in their capacities as members of the Administrative Committee, <br><br>     **Defendants.** | **CIVIL ACTION FILE NO:** <br> **5:24-00080 (DNH/MJK)** |

<u>**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS**</u>

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF FACTS .................................................................................. 1

   A.  **Plan Fiduciaries Did Not Implement Nor Employ a Prudent Process for Monitoring Service Providers to the Plan.** ............................................................... 2

   B.  **Plan Fiduciaries Did Not Implement Nor Employ a Prudent Process for Monitoring Plan Investments.** ....................................................................................... 3

   C.  **Plan Fiduciaries Failed to Act for the Benefit of Plan Participants.** ........................... 3

III.  ARGUMENT ...................................................................................................... 4

   A.  **Defendants' Prefatory Challenges Lack Merit.** ........................................................ 4

     1.  **Plaintiffs Have Article III Standing.** ................................................................ 4

     2.  **Plaintiffs Were Not Required to Exhaust Administrative Remedies.** .................... 8

     3.  **Plaintiffs' Claims Are Timely.** ....................................................................... 9

   B.  **Plaintiffs' Prudence Claim Satisfies *Iqbal/Twombly*.** ............................................. 14

   C.  **Plaintiffs' Loyalty Claim Satisfies *Iqbal/Twombly*.** .............................................. 20

   D.  **Plaintiffs' Breach of Omission Claim Satisfies *Iqbal/Twombly*.** ............................ 22

   E.  **Plaintiffs Stated a Claim for Breach of the Duty to Monitor.** ................................... 22

IV.  CONCLUSION .................................................................................................. 23

# **TABLE OF AUTHORITIES**

## **Cases**

*Aesthetic Surgery, P.C. v. Empire Blue Cross Blue Shield,* 2021 U.S. Dist. LEXIS 31259 (S.D.N.Y. Feb. 19, 2021)............................................................................................ 12

*Anderson v. Intel Corp. Inv. Pol'y Comm.*, 579 F. Supp. 3d 1133, 1148-54 (N.D. Cal. 2022).... 18

*Arkun v. Unum Grp.,* 767 Fed. Appx. 51, 53 (2d Cir. Apr. 12, 2019) ......................................... 12

*Baptist Mem'l Hosp. - Desoto, Inc. v. Crain Auto., Inc.*, 392 Fed. Appx. 289, 294 (5th Cir. Aug. 19, 2010)........................................................................................................................... 13

*Bell v. Pension Committee of ATH Holding Co., LLC,* 2017 U.S. Dist. LEXIS 42107, *8-11 (S.D. Ind. Mar. 23, 2017)........................................................................................................... 14

*Bickley v. Caremark Rx, Inc.*, 461 F.3d 1325 (11th Cir. 2006) ....................................................... 9

*Bird v. Shearson Lehman/Am. Express*, 926 F.2d 116, 122 (2d Cir. 1991)........................................ 8

*Blankenship v. Chamberlain*, 695 F. Supp. 2d 966, 971 (E.D. Mo. 2010).................................... 11

*Bouvy v. Analog Devices, Inc.*, 2020 U.S. Dist. LEXIS 110747, *5 (S.D. Cal. June 24, 2020)... 14

*Boyette v. Montefiore Med. Ctr.,* 2023 U.S. Dist. LEXIS 203442 (S.D.N.Y. Nov. 13, 2023) ....... 7

*Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009) ................................... passim

*Brown v. Daikin Am., Inc.,* 2021 U.S. Dist. LEXIS 85195, *9 (S.D.N.Y. May 4, 2021).............. 5

*Cal. Pub. Emps' Ret. Sys. v. ANZ Secs., Inc.*, 582 U.S. 497, 507 (2017) .................................... 10

*Caputo v. Pfizer, Inc.*, 267 F.3d 181, 189 (2d Cir. 2001) ....................................................... 10, 13

*Cassell v. Vanderbilt Univ.,* 285 F. Supp. 3d 1056, 1061 (M.D. Tenn. 2018) ............................. 14

*Cryer v. Franklin Templeton Res*., 2017 U.S. Dist. LEXIS 34040, *11 (N.D. Cal. Jan. 17, 2017) ...................................................................................................................................... 16

*Ctr. for Restorative Breast Surgery, L.L.C. v. Blue Cross Blue Shield of La.,* 2016 U.S. Dist. LEXIS 61071, at *41 (E.D. La. May 6, 2016) ............................................................... 13

*Cunningham v. USI Ins. Servs., LLC*, 2023 U.S. Dist. LEXIS 220905, *11 (S.D.N.Y. Dec. 11, 2023)......................................................................................................................... 19

*DePace v. Matsushita Elec. Corp. of Am.,* 257 F. Supp. 2d 543, 558 (E.D.N.Y. 2003) ............ 8, 9

*Disberry v. Emp. Rels. Comm. of the Colgate-Palmolive Co*., 646 F. Supp. 3d 531, 547 (S.D.N.Y. 2022)....................................................................................................................... 9

*Dist. 65 Ret. Tr. for Members of Bureau of Wholesale Sales Representatives v. Prudential Sec., Inc.*, 925 F. Supp. 1551, 1561 (N.D. Ga. 1996)................................................................ 10

*Donovan v. Cunningham*, 716 F.2d 1455, 1464-65 (5th Cir. 1983)............................................. 20

*Falberg v. Goldman Sachs Group, Inc.,* 2020 U.S. Dist. LEXIS 121457, *21-27 (S.D.N.Y. July 9, 2020)................................................................................................................................ 14

*Falberg v. Goldman Sachs Grp.*, 2022 U.S. Dist. LEXIS 34012, at *15 n.4 (S.D.N.Y. Feb. 14, 2022)...................................................................................................................................... 7

*Feinberg v. T. Rowe Price Group, Inc.*, 2018 U.S. Dist. LEXIS 140709, *13-17 (D. Md. Aug. 20, 2018).................................................................................................................................. 14

*Ferguson v. Ruane Cunniff & Goldfarb Inc.*, 2019 U.S. Dist. LEXIS 160112 (S.D.N.Y. Sep. 18, 2019)................................................................................................................................... 16

*Fin. Institutions Ret. Fund v. OTS*, 964 F.2d 142, 147-48 (2d Cir. 1992) .................................... 6

*Fleming v. Rollins, Inc.,* 2023 U.S. Dist. LEXIS 30824, at *26 (N.D. Ga. Jan. 30, 2023).... 10, 17, 19, 21

*Forman v. TriHealth, Inc.,* 40 F.4th 443, 450 (6th Cir. 2022).................................................... 14

*Gamache v. Hogue*, 446 F. Supp. 3d 1315, 1329-31 (M.D. Ga. 2020) ........................................ 10

*Gilmore v. Am. Basketball Ass'n Players' Ret. Plan*, 2015 U.S. Dist. LEXIS 189644, *17-18
   (M.D. Fla. Nov. 19, 2015) ............................................................................................. 12
*Goodman v. Columbus Reg'l Healthcare Sys.*, 2022 U.S. Dist. LEXIS 13489, *7-8 (M.D. Ga.
   Jan. 25, 2022)................................................................................................................ 19
*Haddock v. Nationwide*, 419 F. Supp. 2d 156, 168 (D. Conn. 2006) ................................... 22
*Hay v. Gucci America, Inc.*, 2018 U.S. Dist. LEXIS 171193, *14-15 (D.N.J. Oct. 3, 2018)....... 14
*Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 102 (2003).................... 12, 13, 14
*Henderson v. Emory Univ.*, 252 F. Supp. 3d 1344, 1356 (N.D. Ga. 2017) ................................ 20
*Hughes v. Northwestern Univ.*, 142 S. Ct. 737, 742 (2022) ...................................................... 9
*Hyder v. Kemper Nat'l Servs., Inc.*, 2006 U.S. Dist. LEXIS 97955, *31 (N.D. Cal. June 30, 2006)
   ...................................................................................................................................... 11
*In re Beacon Assocs. Litig.*, 818 F. Supp. 2d 697, 709-11 (S.D.N.Y. 2011) ............................... 21
*In re Duke Energy ERISA Litig.*, 281 F. Supp. 2d 786, 795 (W.D. N.C. 2003) ........................... 22
*In re M&T Bank Corp. ERISA Litig.*, 2018 U.S. Dist. LEXIS 154641, *20-21 (W.D.N.Y. Sept.
   11, 2018)....................................................................................................................... 14
*In re Omnicom ERISA Litig.*, 2021 U.S. Dist. LEXIS 144054 (S.D.N.Y. Aug. 2, 2021).............. 7
*Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768, 774 (2020)................................... 9, 13
*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, 250 F. Supp. 3d 460, 465 (N.D. Cal. 2017) ..... 7, 19
*Johnson v. Providence Health & Servs.*, 2018 U.S. Dist. LEXIS 47569, *11-12 (W.D. Wash.
   Mar. 22, 2018) .......................................................................................................... 14, 20
*Jovel v. I-Health, Inc.*, 2013 U.S. Dist. LEXIS 139661, *28-30 (E.D.N.Y. Sep. 27, 2013) ......... 6
*Kanawi v. Bechtel Corp.*, 590 F. Supp. 2d 1213, 1228 (N.D. Cal. 2008)................................... 21
*Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993)...................... 8
*Klotz v. Xerox Corp.*, 519 F. Supp. 2d 430, 435 (S.D.N.Y. 2007) ........................................... 8
*Kruger v. Novant Health, Inc.*, 131 F. Supp. 3d 470, 476 (M.D.N.C. 2015)............................. 14
*Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 154-56 (S.D.N.Y. 2017).......... 5, 22
*Long Island Head Start Child Development Services, Inc. v. Economic Opportunity Commission
   of Nassau County, Inc.*, 710 F.3d 57, 67 n.5 (2d Cir. 2013)......................................... 5
*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) .................................................... 4
*Main v. Am. Airlines*, 248 F. Supp. 3d 786, 794 (N.D. Tex. Mar. 31, 2017)............................. 14
*Mardis v. Hewitt*, 2017 U.S. Dist. LEXIS 43107, *37 (D.N.J. Mar. 23, 2017)......................... 13
*Martin v. Consultants & Admin., Inc.*, 966 F.2d 1078, 1089 (7th Cir. 1992).............................. 10
*Martin v. Nat'l Bank*, 828 F. Supp. 1427, 1437 (D. Alaska 1992) ........................................ 21
*Masella v. Blue Cross & Blue Shield of Conn., Inc.*, 936 F.2d 98, 107 (2d Cir. 1991)............... 11
*McCulloch v. Bd. of Trs. of The Seiu Affiliates Officers and Emps. Pension Plan*, 2016 U.S. Dist.
   LEXIS 195182, *14 (S.D.N.Y. Mar. 31, 2016)................................................................. 8
*Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018)............................................ 17
*Moler v. Univ. of Md. Med. Sys.*, 2022 U.S. Dist. LEXIS 124804 *10 n.7 (D. Md. July 13, 2022)
   ...................................................................................................................................... 17
*Moreno v. Deutsche Bank Americas Holding Corp.*, 2017 U.S. Dist. LEXIS 143208, *29
   (S.D.N.Y. Sept. 5, 2017)............................................................................................ 6, 14
*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012)
   ...................................................................................................................................... 5
*Nechis v. Oxford Health Plans*, Inc., 421 F.3d 96, 102 (2d Cir. 2005) .................................... 8
*Nicolas v. Trs. of Princeton Univ.*, 2017 U.S. Dist. LEXIS 151775, *10-11 (D.N.J. Sept. 25,
   2017*)* ............................................................................................................................ 14

iii

*O'Driscoll v. Plexus Corp.*, 2022 U.S. Dist. LEXIS 150844, *18 (E.D. Wis. Aug. 22, 2022) .... 19

*O'Neil v. Ret. Plan for Salaried Employees of RKO Gen., Inc.,* 37 F.3d 55, 59 (2d Cir. 1994)... 11

*Ortega Candelaria v. Orthobiologics LLC*, 661 F.3d 675, 681 (1st Cir. 2011) ......................... 13

*Osberg v. Foot Locker, Inc.*, 862 F.3d 198, 210-11 (2d Cir. 2017)............................................... 10

*Parmer v. Land O'Lakes, Inc.,* 518 F. Supp. 3d 1293, 1304 (D. Minn. 2021) ........................... 17

*PBGC v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 716 (2nd Cir. 2012) ................................. 15

*Pegram v. Herdrich*, 530 U.S. 211, 235 (2000)............................................................................ 20

*Pinnell v. Teva Pharmaceuticals USA, Inc*., 2020 U.S. Dist. LEXIS 55617, *13-14 (E.D. Pa.
Mar. 31, 2020) ........................................................................................................................ 14

*Pledger v. Reliance Trust Co.*, 240 F. Supp. 3d 1314, 1330 (N.D. Ga. 2017) ................ 19, 20, 21

*Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi. v. Bank of N.Y. Mellon,* 775 F.3d
154, 161 (2d Cir. 2014) ............................................................................................................ 6

*Rosen v. Prudential Ret. Ins. & Annuity Co*., 718 Fed. Appx. 3, 7 (2d Cir. Oct. 11, 2017)......... 19

*Ruilova v. Yale-New Haven Hosp., Inc*., 2023 U.S. Dist. LEXIS 33791, at *38-39 (D. Conn. Mar.
1, 2023)...................................................................................................................................... 5

*Savage v. Sutherland Glob. Servs*., 521 F. Supp. 3d 308 (W.D.N.Y. 2021) ................................. 9

*Schapker v. Waddell & Reed Fin., Inc.,* 2018 U.S. Dist. LEXIS 28458, *25 (D. Kan. Feb. 22,
2018)........................................................................................................................................ 16

*Schapker v. Wadell & Reed Financial, Inc*., 2018 U.S. Dist. LEXIS 28458, *20-26 (D. Kan. Feb.
22, 2018) .................................................................................................................................. 14

*Schultz v. Edward Jones*, 2018 U.S. Dist. LEXIS 49948, *8-9 (E.D. Mo. Mar. 27, 2018).......... 14

*Silva v. Evonik Corp.,* 2020 U.S. Dist. LEXIS 250206, *11-13 (D.N.J. Dec. 30, 2020).............. 14

*Singh v. Deloitte LLP*, 650 F. Supp. 3d 259 (S.D.N.Y. 2023)......................................................... 7

*Skipper v. Claims Servs. Int'l*, 213 F. Supp. 2d 4, 8 (D. Mass. 2002) ......................................... 11

*Smith v. CommonSpirit Health*, 37 F.4th 1160 (6th Cir. 2022) ............................................ 16, 18

*Spear v. Fenkell*,  2016 U.S. Dist. LEXIS 135374, *60 (E.D. Pa. Sept. 30, 2016) ..................... 21

*Stuart Park Associates LP v. Ameritech Pension Trust,* 51 F.3d 1319 (7th Cir. 1995)............... 21

*Sweda v. Univ. of Pa*., 923 F.3d 320, 326 (2019) ....................................................................... 16

*Sweda v. Univ. of Pa*., 923 F.3d 320, 329 (3d Cir. 2019).............................................................. 14

*Taveras v. UBS AG*, 612 Fed. Appx. 27 (2d Cir. Apr. 30, 2015) ................................................... 7

*Terraza v. Safeway Inc.,* 241 F. Supp. 3d 1057, 1076-77 (N.D. Cal. 2017).......................... 14, 19

*The President Polk,* 43 F. 2d 695, 697-98 (2d Cir. 1930)............................................................. 12

*Thole v. U.S. Bank, N.A,* 140 S. Ct. 1615 (2020)............................................................................ 7

*Tibble v. Edison Int'l*, 575 U.S. 523, 538 (2015) ................................................................... 10, 15

*Troudt v. Oracle Corp*., 2017 U.S. Dist. LEXIS 41344, *4-5 (D. Colo. Mar. 22, 2017)  14, 17, 18,
22

*Tuminello v. Aetna Life Ins. Co.,* 2014 U.S. Dist. LEXIS 20964 (S.D.N.Y. Feb. 14, 2014)........ 12

*Tussey v. ABB, Inc.,* 746 F.3d 327, 336 (8th Cir. 2014) .............................................................. 19

*Vellali v. Yale Univ.*, 333 F.R.D. 10, 15 (D. Conn. 2019) .................................................. 6, 7, 16

*Walsh v. Marsh & McLennan Cos.,* 2006 U.S. Dist. LEXIS 12020, *4 (D. Md. Feb. 27, 2006)... 7

*Wehner v. Genentech, Inc.*, 2021 U.S. Dist. LEXIS 26227 (N.D. Cal. Feb. 9, 2021)................. 18

*Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808 (7th Cir. 2010) ........................ 12

## Statutes

29 U.S.C. § 1104................................................................................................................................ 10

29 U.S.C. § 1104(a) ..................................................................................................... 9, 10, 14

29 U.S.C. § 1104(a)(1)(A) .................................................................................................... 20
29 U.S.C. § 1104(a)(1)(A)(ii) ............................................................................................... 19
29 U.S.C. § 1104(a)(1)(B) .............................................................................................. 14, 20
29 U.S.C. § 1104(a)(1)(D) .................................................................................................... 13
29 U.S.C. § 1106 ............................................................................................................. 10, 20
29 U.S.C. § 1106(a)(1)(C) .................................................................................................... 21
29 U.S.C. § 1106(b) .............................................................................................................. 21
29 U.S.C. § 1106(b)(1) .......................................................................................................... 21
29 U.S.C. § 1106(b)(3) .......................................................................................................... 21
29 U.S.C. § 1109(a) ................................................................................................................. 4
29 U.S.C. § 1113 .............................................................................................................. 9, 10
29 U.S.C. § 1113(1)(B) ......................................................................................................... 10
29 U.S.C. § 1113(2) ......................................................................................................... 10, 13
29 U.S.C. § 1132(a)(2) ............................................................................................................. 4
29 U.S.C. § 1132(a)(3) ............................................................................................................. 5
29 U.S.C. § 1132(g) ............................................................................................................... 23

**Other Authorities**

ERISA Adv. Op. 2013-03A (July 3, 2013) ........................................................................... 22

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................................................... 1

## I.      INTRODUCTION

In their motion to dismiss ("MTD"), Defendants, fiduciaries of the ERISA-governed defined contribution plan sponsored by Northeast Grocery (collectively, "Defendants" or "Plan Fiduciaries"), attempt to argue the merits of Plaintiffs' claims rather than the sufficiency of the allegations in the Complaint. A Rule 12(b)(6) motion is not the proper vehicle to resolve disputed factual questions.

In any event, the MTD should be denied. The glaring disconnect is Defendants' failure to recognize the nature of Plaintiffs' claims against them. Plaintiffs do not challenge the prudence of Plan Fiduciaries' selecting specific investment funds for inclusion in the Plan, or high-priced providers servicing the Plan. Rather, Plaintiffs challenge Plan Fiduciaries' failure to maintain and follow a prudent process for administering the Plan, their failure to act in the exclusive interest of Plan participants and beneficiaries, their violations of ERISA's prohibited transaction rules, and their breaches of omission.  Should the Court be inclined to grant the MTD, Plaintiffs request leave to amend.

## II.     STATEMENT OF FACTS[1]

The Plan allows eligible employees the ability to defer income for retirement. (Compl. ¶ 8.) The Committee and its members are responsible for selecting and monitoring the Plan's investments and service providers. (*Id.* ¶¶ 20-21, 35-39.) Since 2009, Fidelity has served as recordkeeper for the Plan, and a Fidelity affiliate served as Directed Trustee. (*Id.* ¶¶ 14, 94, 96.) Since 2017, CapFinancial Partners, LLC ("CapFinancial") has served as financial advisor and investment manager for the Plan. (*Id.*)

---

[1] The Statement of Facts is derived from the allegations in the Complaint, which must be taken as true for purposes of the MTD, and the documents it incorporates by reference.

**A.     Plan Fiduciaries Did Not Implement Nor Employ a Prudent Process for Monitoring Service Providers to the Plan.**

During the Class Period, Plan Fiduciaries neither implemented nor employed a prudent process for monitoring the Plan's service providers at regular intervals. (*Id.* ¶¶ 22, 85-121.) Plan Fiduciaries knowing allowed Fidelity to receive significant revenue, including fees generated from Fidelity's proprietary products, which bore no relationship to the cost or value of any such services provided by them to the Plan. (*Id.* ¶¶ 48, 53-56, 97, 101-106, 109-15, 119, 123.) Plan Fiduciaries then allowed Fidelity to retain this surplus with them and the other Defendants rather than rebate it to the Plan. (*Id.* ¶¶ 48, 123, 125, 200.)

Plan Fiduciaries did not evaluate at any time, let alone at regular intervals, whether the Plan's revenue sharing arrangement with Fidelity continued to be in the best interests of participants. (*Id.* ¶¶ 104-06, 109-15, 119-20.) This is so even though the size of the Plan gave Plan Fiduciaries tremendous bargaining power in the marketplace to solicit bids and negotiate competitive recordkeeping fees from what were essentially commoditized services. (*Id.* ¶¶ 85, 87-88, 105, 118-19.)

During the Class Period, Plan Fiduciaries also did not evaluate whether the investment portfolio managers for the funds selected for the Plan were competent and untainted by self-conflict. (*Id.* ¶¶ 26, 28, 35-43, 48, 50-53, 56, 57, 60-61,63-72.) They were not. (*See id.* ¶ 40.) Plan Fiduciaries did not periodically monitor Cap Financial let alone review whether it provided services that warranted such high fees. (*Id.* ¶¶ 81-83.) As a result, improvident advisors serviced the Plan, and charged for services that were not necessary. (*Id.* ¶¶ 82, 84.)

**B.      Plan Fiduciaries Did Not Implement Nor Employ a Prudent Process for Monitoring Plan Investments.**

At relevant times during the Class Period, Plan Fiduciaries did not monitor several funds in the Plan that they knew continued to perform poorly and paid excessive recordkeeping fees, and, consequently, did not replace these options with better performing, lower fee funds that were then available for them to select. (¶¶ 35-40, 42-43, 46-48, 61-72.) At all relevant times, Plan Fiduciaries knew that the funds they selected and thereafter retained did not meet the requirements per the Plan's Investment Policy Statement, and then hid from participants the funds' poor performance history and excessive revenue sharing fees. (*Id.* ¶¶ 41, 46-48, 73-78.)  At the time they made their decisions to select and retain these investments, Plan Fiduciaries knew or should have known that the funds, based on their historic performance and other market factors, would not generate returns that compensated for the additional fees that were charged to participants. (*Id.* ¶¶ 35-37, 39-43, 48, 50-53.) They then misrepresented to participants the hidden fees paid to service providers, and affirmatively endorsed investments to participants that they knew were subpar. (*See id.* & ¶ 126-27.)

**C.      Plan Fiduciaries Failed to Act for the Benefit of Plan Participants.**

By selecting high-cost investments with revenue sharing so that it could use a portion of the fees to pay inflated fees to Fidelity, Plan Fiduciaries acted to save themselves at the expense of Plan participants and/or to favor Fidelity over the Plan participants and the trust.  (*See id.* ¶¶ 123, 126, 129, 130.)  Plan Fiduciaries decided what rebates were kept by providers and what was left to be credited to participants' accounts (usually three to six months after the affected participants' revenue-sharing deductions). (*Id.* ¶¶ 126-27.)  Their interest in finding and receiving

mutual fund and collective fund non-pecuniary revenue credits overwhelmed their desire to seek out the lowest risk and highest potential returns for their participants. (*Id.* ¶ 127.)

## III.    ARGUMENT

### A.    Defendants' Prefatory Challenges Lack Merit.

As a prefatory matter, Defendants challenge Plaintiffs' ability to bring their claims. None of the grounds upon which Defendants premise their arguments has merit.

#### 1.    Plaintiffs Have Article III Standing.

Article III requires that a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Accord Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiffs have pled sufficient facts supporting their constitutional standing. As Defendants concede, Plaintiffs each invested in at least one of the funds in the Plan for which Plan Fiduciaries lacked a prudent process to monitor, and putative class members invested in the rest. Plaintiffs further allege that Defendants' various violations of ERISA caused them and the Plan to incur substantial damages. These allegations show that Plaintiffs have the requisite standing to bring suit.

As a matter of law, the fact that Plaintiffs may not have personally invested in every individual fund offered by the Plan does not change this conclusion. As to their claims brought under ERISA § 502(a)(2),[2] Plaintiffs have Article III standing by alleging facts supporting that

---

[2] ERISA § 502(a)(2) provides: "A civil action may be brought … by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title …." 29 U.S.C. § 1132(a)(2). 29 U.S.C. § 1109(a) provides: "[A] fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and … shall be subject to such other equitable or remedial relief as the court may deem appropriate …."

Plan Fiduciaries' misconduct impaired the value of their individual accounts and the value of Plan assets as a whole. *See Long Island Head Start Child Development Services, Inc. v. Economic Opportunity Commission of Nassau County, Inc.,* 710 F.3d 57, 67 n.5 (2d Cir. 2013) (plaintiffs who, in a derivative capacity, allege injuries to the plan establish "injury-in-fact sufficient for constitutional standing"); *accord Brown v. Daikin Am., Inc.,* 2021 U.S. Dist. LEXIS 85195, *9 (S.D.N.Y. May 4, 2021). As *Brown* instructs:

> The nature of this lawsuit is derivative, not personal: the Plaintiffs bring their breach of fiduciary duty claims pursuant to Sections 1109(a) and 1132(a)(2) of ERISA, which do not call for individual relief, but instead are claims brought in a representative capacity on behalf of the plan. Accordingly, the Plaintiffs sue not only to recover their individual losses but to also vindicate the collective injuries suffered by the Plan and its participants. And ERISA permits them to do this—to step into the shoes of Plan attorney general—so long as they can demonstrate that they are within the zone of interests ERISA was intended to protect.

*Brown,* 2021 U.S. Dist. LEXIS 85195, at *9 (internal citations, punctuation, and quotation marks omitted).

Plaintiffs also have alleged injury-in-fact with respect to their individual claims under ERISA § 502(a)(3)[3] because they personally "suffered some actual … injury as a result of the putatively illegal conduct of the defendant, and … such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.,* 693 F.3d 145, 162 (2d Cir. 2012). *Accord Leber v. Citigroup 401(k) Plan Inv. Comm.,* 323 F.R.D. 145, 154-56 (S.D.N.Y. 2017). *See also Ruilova v. Yale-New Haven Hosp., Inc.,* 2023 U.S. Dist. LEXIS 33791, at *38-39 (D. Conn. Mar. 1, 2023) ("The evidence required for Plaintiffs' individual claims

---

[3] ERISA § 502(a)(3) provides: "A civil action may be brought … by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan …."

… tends to prove class claims related to the funds in which Plaintiffs did not invest, and '[b]ecause the alleged harms are premised on the process Defendants used to manage the Plan, the claims involve similar inquiries and proof, and thus implicate the same set of concerns.'") (quoting *Moreno v. Deutsche Bank Americas Holding Corp.*, 2017 U.S. Dist. LEXIS 143208, *29 (S.D.N.Y. Sept. 5, 2017)).

Because Plaintiffs have alleged particularized injury as to one or more of the challenged funds, and the crux of their claims is rooted in the Plan Fiduciaries' misconduct in administering the Plan and managing the funds as a group, their "litigation incentives are sufficiently aligned with those of the absent class members that the named plaintiff may properly assert claims on their behalf." *Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi. v. Bank of N.Y. Mellon,* 775 F.3d 154, 161 (2d Cir. 2014). Even though Plaintiffs may not have suffered concrete financial harm with respect to each of the funds at issue, Defendants' misconduct violated their right to a plan administered in accordance with ERISA. Hence, Plaintiffs have Article III standing*. Accord Fin. Institutions Ret. Fund v. OTS*, 964 F.2d 142, 147-48 (2d Cir. 1992) (Article III's injury-in-fact requirement satisfied where ERISA participant alleged an invasion of his statutory rights to proper fiduciary administration of the plan). *See also Vellali v. Yale Univ.,* 333 F.R.D. 10, 15 (D. Conn. 2019) ("Even though every member of the proposed class—including the proposed lead plaintiffs—did not invest in all of the Plan's funds, the alleged foregone opportunities from funds that were not included and the alleged reduction in choice that resulted is an alleged injury in fact.") (quotation marks and citations omitted); *Jovel v. I-Health, Inc.,* 2013 U.S. Dist. LEXIS 139661, *28-30 (E.D.N.Y. Sep. 27, 2013) (class representative claims had Article III relating to the products that she did not purchase because "there [were] sufficient similarities among [the] products [such] that any concerns regarding the differences can be addressed at the class

certification stage"); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009) (once participant establishes Article III injury due to alleged mismanagement of plan, he has standing to seek relief under ERISA "that sweeps beyond his own injury"); *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, 250 F. Supp. 3d 460, 465 (N.D. Cal. 2017) (plaintiff had standing to bring claims even though he had not invested in every mutual fund challenged in the putative class claims); *Walsh v. Marsh & McLennan Cos.*, 2006 U.S. Dist. LEXIS 12020, *4 (D. Md. Feb. 27, 2006) ("[I]t does not matter, at least for the purpose of constitutional standing, that [the plaintiff] [had] not invested in [certain] funds.").

None of the cases upon which Defendants rely requires a different conclusion. *Thole v. U.S. Bank, N.A,* 140 S. Ct. 1615 (2020), which analyzed Article III standing only for plaintiffs who were participants in defined-benefit plans "has little or no relevance when evaluating standing in ERISA cases concerning defined-contribution plans." *Vellali,* 2022 U.S. Dist. LEXIS 192235, at *58 (citations omitted). *Taveras v. UBS AG,* 612 Fed. Appx. 27 (2d Cir. Apr. 30, 2015) is likewise inapposite because the plaintiffs there, unlike Plaintiffs here, did not "allege any facts connecting her 'purported losses to the fiduciaries' alleged breaches[.]" *Id.* at 28. The same court that decided *In re Omnicom ERISA Litig.,* 2021 U.S. Dist. LEXIS 144054 (S.D.N.Y. Aug. 2, 2021) ("*Omnicom*") later held that *Omnicom* represents the *minority* view in the Southern District. *Falberg v. Goldman Sachs Grp.*, 2022 U.S. Dist. LEXIS 34012, at *15 n.4 (S.D.N.Y. Feb. 14, 2022). For this reason, the two cases which relied on *Omnicom -- Singh v. Deloitte LLP*, 650 F. Supp. 3d 259 (S.D.N.Y. 2023), which is currently on appeal to the Second Circuit, and *Boyette v. Montefiore Med. Ctr.,* 2023 U.S. Dist. LEXIS 203442 (S.D.N.Y. Nov. 13, 2023) -- are neither persuasive nor binding.  In short, this Court should deny Defendants' challenge to Plaintiffs' Article III standing.

**2.      Plaintiffs Were Not Required to Exhaust Administrative Remedies.**

In arguing failure to exhaust, Defendants overlook that the Plan's claims procedures and exhaustion requirements apply only to "claims for benefits under the Plan, and all other claims involving the Plan[.]" (ECF 10-3, p. 50.) In contrast to the cases cited in the MTD,[4] Plaintiffs do <u>not</u> allege claims for benefits or any requiring interpretation of the terms of the Plan; rather, Plaintiffs' claims all concern Defendants' alleged statutory violations through improper administration of the Plan.  As a matter of law, therefore, Plaintiffs were not required to exhaust the Plan's administrative remedies. *See Nechis v. Oxford Health Plans*, Inc., 421 F.3d 96, 102 (2d Cir. 2005) ("District courts in the Second Circuit have routinely dispensed with the exhaustion prerequisite where plaintiffs allege a statutory ERISA violation.") (quoting *DePace v. Matsushita Elec. Corp. of Am.,* 257 F. Supp. 2d 543, 558 (E.D.N.Y. 2003)); *Park v. Trustees of 1199 SEIU Health Care Employees Pension Fund,* 418 F. Supp. 2d 343, 358 (S.D.N.Y. 2005) ("District courts within this Circuit, however, have permitted claims for statutory violations of ERISA even though administrative remedies were not exhausted."); *McCulloch v. Bd. of Trs. of The Seiu Affiliates Officers and Emps. Pension Plan,* 2016 U.S. Dist. LEXIS 195182, *14 (S.D.N.Y. Mar. 31, 2016) ("This Court agrees that exempting statutory claims from the exhaustion requirement best serves ERISA's purposes."), *aff'd*, 686 Fed. Appx. 68 (2d Cir. Apr. 10, 2017).  Indeed, "while plan fiduciaries may have expertise in interpreting the terms of the plan itself, statutory interpretation

---

[4] *E.g., Kennedy v. Empire Blue Cross & Blue Shield,* 989 F.2d 588, 594 (2d Cir. 1993) (involving alleged misapplication of reimbursement provisions in plan); *Bird v. Shearson Lehman/Am. Express*, 926 F.2d 116, 122 (2d Cir. 1991) (concerning enforcement of arbitration provision in ERISA-governed agreement); *Klotz v. Xerox Corp.,* 519 F. Supp. 2d 430, 435 (S.D.N.Y. 2007) (involving forum selection clauses in ERISA plan).

8

is the province of the judiciary." *DePace*, 257 F. Supp. 2d at 557. *See also Disberry v. Emp. Rels. Comm. of the Colgate-Palmolive Co.*, 646 F. Supp. 3d 531, 547 (S.D.N.Y. 2022) (plaintiffs not required to exhaust administrative remedies where, as here, their allegations centered on whether defendants failed to identify and investigate red flags, failed to establish appropriate procedures, and failed to monitor other fiduciaries activities); *accord Savage v. Sutherland Glob. Servs.*, 521 F. Supp. 3d 308, 313-14 (W.D.N.Y. 2021).

In arguing otherwise, Defendants improperly misrepresent an Eleventh Circuit case, *Bickley v. Caremark Rx, Inc.*, 461 F.3d 1325 (11th Cir. 2006), as a Second Circuit Court decision. (*See* ECF 10-1, p. 29.)  *Bickley* recognized that, unlike district courts in the Second Circuit, district courts in the Eleventh Circuit require exhaustion of administrative remedies even for statutory claims. *Id.*  The case is neither binding nor relevant.

### 3.     Plaintiffs' Claims Are Timely.

Contrary to Defendants' contention, Plaintiff's claims under are timely under ERISA § 413.[5]  *Accord Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768, 774 (2020).  Under ERISA § 404(a), Plan Fiduciaries owed participants a continuing fiduciary duty to prudently and loyally monitor Plan investments, service providers, and the corresponding fees that were charged. *Accord Hughes v. Northwestern Univ.*, 142 S. Ct. 737, 742 (2022); *Tibble v. Edison Intern.*, 575 U.S. 523, 527-30 (2015); 29 U.S.C. §§ 1104(a)(1).  Not only did Plan Fiduciaries breach these duties throughout the Class Period, but also they affirmatively concealed those breaches and,

---

[5] ERISA § 413 requires plaintiffs to file suit within the shorter of either: "(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation; except that in the case of fraud or concealment [by plan fiduciaries], such action may be commenced not later than six years after the date of discovery of such breach or violation." 29 U.S.C. § 1113.

unbeknownst to Plaintiffs, committed transactions prohibited by ERISA § 406. (*E.g.,* Compl. ¶¶ 47, 52, 123-28, 146-58.)  These allegations trigger the concealment exception under ERISA § 413 such that the six-year repose period on Plaintiffs' ERISA §§ 404 and 406 claims did not commence until Plaintiff discovered Defendants' violations. *Accord Cal. Pub. Emps' Ret. Sys. v. ANZ Secs., Inc.*, 582 U.S. 497, 507 (2017); *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 189 (2d Cir. 2001); 29 U.S.C. § 1113.  Because Plaintiffs discovered the violations less than three years before the Complaint was filed (Compl. ¶ 158), Plaintiffs' claims are timely. *Accord Fleming v. Rollins, Inc.,* 2023 U.S. Dist. LEXIS 30824, at *26 (N.D. Ga. Jan. 30, 2023); 29 U.S.C. § 1113(2). *See also Osberg v. Foot Locker, Inc.*, 862 F.3d 198, 210-11 (2d Cir. 2017) (upholding judgment of court following bench trial that, under concealment exception in ERISA § 413, plaintiff's ERISA § 404(a) claims were timely because they were brought within six years of their discovery); *Dist. 65 Ret. Tr. for Members of Bureau of Wholesale Sales Representatives v. Prudential Sec., Inc.*, 925 F. Supp. 1551, 1561 (N.D. Ga. 1996) (denying motion to dismiss investment-related claim under concealment exception to ERISA's repose provision); *Gamache v. Hogue*, 446 F. Supp. 3d 1315, 1329-31 (M.D. Ga. 2020) (denying motion to dismiss ERISA claimed alleging breaches of prudence, loyalty, and prohibited transactions that occurred outside repose period where, as here, plaintiffs alleged fiduciaries affirmatively misrepresented material facts to participants relevant to their claims).

Under ERISA § 413(1)(B), Plaintiffs' breach of fiduciary duty claims by omission also are timely. Plaintiffs have alleged that Plan Fiduciaries, throughout the Class Period and through the present, failed to take action against the other Defendants to return Plan assets, disgorge ill-gotten profits, make restitution, and/or recoup Plan losses. As a matter of law, the statutory limitations period on the omission claims has not yet commenced. *Accord* 29 U.S.C. § 1113(1)(B); *Tibble*, 575 U.S. at 527-28; *see Martin v. Consultants & Admin., Inc.*, 966 F.2d 1078, 1089 (7th Cir. 1992)

("[T]he end-point of the statute of limitations on the primary claim will mark the start of the limitations period" on the failure to sue claim."); *Blankenship v. Chamberlain*, 695 F. Supp. 2d 966, 971 (E.D. Mo. 2010) (supporting same).

Defendants alternatively argue that Plaintiffs claims are untimely under the Plan's limitations period, which they maintain expired 90 days after Plaintiffs, "in the exercise of reasonable diligence[,]" should have known that "that the Administrator disagreed" with their factual allegations. (ECF 10-1, pp. 30-31.) Their argument fails as a matter of law for several reasons.

First, because Plaintiffs were not required to exhaust their administrative remedies prior to filing suit, their Complaint is timely. Indeed, the Administrator did not have had a chance to "disagree" with Plaintiffs' allegations before suit was filed.  Thus, the limitations period, by its terms, never commenced.

Second, the contractual limitations period in the Plan is ambiguous. Plaintiffs, unless they were mind readers, would have to speculate as to when the Administrator theoretically could have "disagreed" with their position. *See, generally, O'Neil v. Ret. Plan for Salaried Employees of RKO Gen., Inc.,* 37 F.3d 55, 59 (2d Cir. 1994) ("Language is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire . . . agreement.") (internal quotation marks and citations omitted). Ambiguities in an ERISA plan are construed against the plan administrator and fiduciaries. *Masella v. Blue Cross & Blue Shield of Conn., Inc.*, 936 F.2d 98, 107 (2d Cir. 1991). This is especially so where, as here, "the rank obscurity of the [plan] language is glaring." *Skipper v. Claims Servs. Int'l,* 213 F. Supp. 2d 4, 8 (D. Mass. 2002). *See also Hyder v. Kemper Nat'l Servs., Inc.*, 2006 U.S. Dist. LEXIS 97955, *31 (N.D. Cal. June 30, 2006) ('Because ambiguous language

in ERISA Plans is interpreted against the insurer, the Court finds that Plaintiff's February, 2005 lawsuit was timely filed."); *cf. Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808 (7th Cir. 2010) (underpayment of lump-sum distribution did not start statute of limitations running where formula for calculating benefits was too complex to have put plaintiff on notice of repudiation); *Gilmore v. Am. Basketball Ass'n Players' Ret. Plan*, 2015 U.S. Dist. LEXIS 189644, *17-18 (M.D. Fla. Nov. 19, 2015) (denying motion to dismiss on untimeliness grounds where at the time plaintiff received his lump sum payment, the plan administrators "did not explain how [his] pension benefits were calculated or provide any details on the number of years of service [he] was being credited with for the years that he played in the ABA or NBA").

Third, the 90-day limitations period is unreasonably short and akin to "a trap to get rid of inconvenient claims." *The President Polk,* 43 F. 2d 695, 697-98 (2d Cir. 1930). *See, generally, Heimeshoff v. Hartford Life & Accident Ins. Co*., 571 U.S. 99, 102 (2003) (plan limitations period must be reasonable). Defendants do not cite to any case enforcing a 90-day limitations period against a plan participant who was not required to exhaust administrative remedies prior to filing suit. *Compare, e.g., Heimeshoff,* 571 U.S. at 109 (three-year proof of loss requirement that left the claimant with one year in which to file suit following the completion of the administrative review process was "reasonable"); *Arkun v. Unum Grp.,* 767 Fed. Appx. 51, 53 (2d Cir. Apr. 12, 2019) (limitations period that left participant almost 2.5 years to file suit after Defendants denied her appeal was reasonable); *Aesthetic Surgery, P.C. v. Empire Blue Cross Blue Shield,* 2021 U.S. Dist. LEXIS 31259 (S.D.N.Y. Feb. 19, 2021) (24-month limitations period from date claim was incurred and that left almost 10 months for plaintiff to file suit was reasonable); *and Tuminello v. Aetna Life Ins. Co.,* 2014 U.S. Dist. LEXIS 20964 (S.D.N.Y. Feb. 14, 2014) (three-year limitations period that left nine months to file suit was reasonable) *with Baptist Mem'l Hosp. - Desoto, Inc. v. Crain*

*Auto., Inc.*, 392 Fed. Appx. 289, 294 (5th Cir. Aug. 19, 2010) (plan with one-year limitations period mostly consumed by the internal review process and leaving the claimant with only 35 days to file suit is unreasonable); *Mardis v. Hewitt*, 2017 U.S. Dist. LEXIS 43107, *37 (D.N.J. Mar. 23, 2017) (contractual limitations period of six months "is the minimally valid period") (citations omitted); *and Ctr. for Restorative Breast Surgery, L.L.C. v. Blue Cross Blue Shield of La.*, 2016 U.S. Dist. LEXIS 61071, at *41 (E.D. La. May 6, 2016) ("[A] contractual limitations period that expires before the issuance of a final denial of benefits is unreasonable.").

Fourth, Defendants' affirmative concealment of their wrongdoing estops them from invoking their contractual limitations defense. Defendants should not be allowed to assert a contractual limitations period when they affirmatively concealed the facts which would have allowed Plaintiffs to file this action sooner.  *See Heimeshoff*, 571 U.S. at 113 ("If the administrator's conduct causes a participant to miss the deadline for judicial review, waiver or estoppel may prevent the administrator from invoking the limitations provision as a defense."); *Ortega Candelaria v. Orthobiologics LLC*, 661 F.3d 675, 681 (1st Cir. 2011) (plaintiff entitled to equitable tolling of contractual deadline in ERISA plan where he was materially misled by defendant's actions, which prevented his timely filing of suit).

Fifth, the limitations provision violates the federal common law and public policy.  Only actual knowledge, not constructive knowledge, triggers the shorter, three-year limitations period under ERISA § 413(2). *Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768, 772-73 (2020); *Caputo*, 267 F.3d at 194. Anything less than actual knowledge would be insufficient to trigger an even shorter limitations period in an ERISA plan. Where the terms of a plan violate the tenets of ERISA, they may not be enforced.  29 U.S.C. § 1104(a)(1)(D). To find otherwise would risk shortening the limitations period to such a degree that it would run afoul of the Supreme Court's

mandate that a contractual limitation period be reasonable. *Heimeshoff*, 571 U.S. at 105-06.  In sum, this Court should reject Defendants' arguments based on timeliness.

### B.   Plaintiffs' Prudence Claim Satisfies *Iqbal/Twombly*.

Plaintiffs sufficiently allege facts showing that Plan Fiduciaries breached their duty to act prudently "under the circumstances then prevailing." 29 U.S.C. § 1104(a)(1)(B).  For example, Plaintiffs allege that, *at the time they made the decisions to select and thereafter retain* funds for the Plan's investment menu, Plan Fiduciaries: (1) had not investigated nor considered the availability lower-fee and equally (if not better) performing share classes of identical funds; (2) had not investigated nor evaluated the performance of underperforming investments against meaningful benchmarks; (3) had not considered nor evaluated whether an active management strategy benefitted participants; and (4) misrepresented and affirmatively concealed material information about Plan options and expenses to participants. Virtually every court has held similar allegations state a claim for breach of prudence under ERISA § 404(a).[6]

---

[6] *Accord Falberg v. Goldman Sachs Group, Inc.,* 2020 U.S. Dist. LEXIS 121457, *21-27 (S.D.N.Y. July 9, 2020); *In re M&T Bank Corp. ERISA Litig.,* 2018 U.S. Dist. LEXIS 154641, *20-21 (W.D.N.Y. Sept. 11, 2018); *Moreno v. Deutsche Bank Ams. Holding Corp.*, 2016 U.S. Dist. LEXIS 142601, *17 (S.D.N.Y. Oct. 13, 2016); *Braden*, 588 F.3d at 598; *Forman v. TriHealth, Inc.,* 40 F.4th 443, 450 (6th Cir. 2022); *Sweda v. Univ. of Pa.*, 923 F.3d 320, 329 (3d Cir. 2019); *Terraza v. Safeway Inc.,* 241 F. Supp. 3d 1057, 1076-77 (N.D. Cal. 2017); *Bouvy v. Analog Devices, Inc.*, 2020 U.S. Dist. LEXIS 110747, *5 (S.D. Cal. June 24, 2020); *Johnson v. Providence Health & Servs.*, 2018 U.S. Dist. LEXIS 47569, *11-12 (W.D. Wash. Mar. 22, 2018); *Kruger v. Novant Health, Inc.*, 131 F. Supp. 3d 470, 476 (M.D.N.C. 2015); *Pinnell v. Teva Pharmaceuticals USA, Inc.*, 2020 U.S. Dist. LEXIS 55617, *13-14 (E.D. Pa. Mar. 31, 2020)*; Silva v. Evonik Corp.,* 2020 U.S. Dist. LEXIS 250206, *11-13 (D.N.J. Dec. 30, 2020); *Feinberg v. T. Rowe Price Group, Inc.*, 2018 U.S. Dist. LEXIS 140709, *13-17 (D. Md. Aug. 20, 2018); *Main v. Am. Airlines*, 248 F. Supp. 3d 786, 794 (N.D. Tex. Mar. 31, 2017); *Cassell v. Vanderbilt Univ.,* 285 F. Supp. 3d 1056, 1061 (M.D. Tenn. 2018); *Schultz v. Edward Jones*, 2018 U.S. Dist. LEXIS 49948, *8-9 (E.D. Mo. Mar. 27, 2018); *Hay v. Gucci America, Inc.,* 2018 U.S. Dist. LEXIS 171193, *14-15 (D.N.J. Oct. 3, 2018); *Schapker v. Wadell & Reed Financial, Inc.*, 2018 U.S. Dist. LEXIS 28458, *20-26 (D. Kan. Feb. 22, 2018); *Nicolas v. Trs. of Princeton Univ.*, 2017 U.S. Dist. LEXIS 151775, *10-11 (D.N.J. Sept. 25, 2017)*; Bell v. Pension Committee of ATH Holding Co., LLC,* 2017 U.S. Dist. LEXIS 42107, *8-11 (S.D. Ind. Mar. 23, 2017); *Troudt v. Oracle Corp.*, 2017 U.S. Dist. LEXIS 41344, *4-5 (D. Colo. Mar. 22, 2017).

Contrary to Defendants' contention, Plaintiffs do not challenge the prudence of selecting and retaining specific investments in the Plan. (ECF 10-1, p. 16) Nor do Plaintiffs maintain that including high-cost share classes of investment options when lower- cost share classes of those same investment options were available support an inference of a flawed fiduciary process. (*Id.* p. 21). To the contrary, Plaintiffs challenge the Plan Fiduciaries' flawed process in selecting and these investments and failure to monitor their performance. *See Tibble*, 575 U.S. at 530 ("A plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones."); *PBGC v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 716 (2nd Cir. 2012) (prudence "focus[es] on a fiduciary's conduct in arriving at [a …] decision, not on its results[.]") (citation and quotation omitted).

As a matter of law, Plan Fiduciaries were free to select and retain any of the funds *so long as* they first evaluated first whether their historic performance and costs were justified by a realistic prospect of excess returns. *Accord Sacerdote v. N.Y. Univ.,* 2017 U.S. Dist. LEXIS 137115, *30-31 (S.D.N.Y. Aug. 25, 2017). Plaintiffs allege that Plan Fiduciaries did not have and, therefore, did not engage in a prudent process for conducting these threshold evaluations. *See id.* ("[P]laintiffs' allegations that NYU breached its fiduciary duties by offering actively managed funds that did not have a 'realistic expectation of higher returns' … plausibly support a prudence claim at [the Rule 12(b)(6) stage.]"); *Braden*, 588 F.3d at 595-96 (where, like here, "process by which appellees selected and managed the funds in the Plan" was "tainted by failure of effort, competence, or loyalty").

Any suggestion that Plaintiffs rest their allegations on hindsight is simply not correct. Plaintiffs carefully distinguish in the Complaint between what Plan Fiduciaries knew (or, if they had followed a prudent process, what they should have known) in advance of their decisions,

and the loss that resulted from their lack of prudence. This is a matter of common sense, not prescience.

In attacking the sufficiency of these factual allegations, Defendants ignore that plaintiffs "generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." *Braden*, 588 F.3d at 596. Resolving "fact intensive" issues which "must account for all the factors which informed the fiduciaries' decision-making" is not proper at pleadings stage. *Schapker v. Waddell & Reed Fin., Inc.,* 2018 U.S. Dist. LEXIS 28458, *25 (D. Kan. Feb. 22, 2018).  *See also Sweda v. Univ. of Pa.*, 923 F.3d 320, 326 (2019) ("Requiring a plaintiff to rule out every possible lawful explanation for the conduct he challenges would invert the principle that the complaint is construed most favorably to the nonmoving party.") (quoting *Braden*, 588 F.3d at 597).

Plaintiffs' allegations render Defendants' reliance on *Ferguson v. Ruane Cunniff & Goldfarb Inc*., 2019 U.S. Dist. LEXIS 160112 (S.D.N.Y. Sep. 18, 2019) and *Smith v. CommonSpirit Health*, 37 F.4th 1160 (6th Cir. 2022) misplaced. Unlike *Ferguson,* Plaintiffs here do not allege nor contend that the costs of an investment, by itself, create a plausible inference that the investment is no longer prudent. 2019 U.S. Dist. LEXIS 160112, at *25.  And unlike *Smith,* Plaintiffs do not allege nor contend that Plan Fiduciaries acted imprudently merely by offering actively managed funds in its mix of investment options. 37 F.4th at 1167-68.  The two cases are factually inapposite.

Plan Fiduciaries fare no better in challenging the adequacy of Plaintiffs' benchmarks. Such a challenge is not proper at the pleadings stage. *Accord Vellali*, 308 F. Supp. 3d at 687-88; *Cryer v. Franklin Templeton Res.*, 2017 U.S. Dist. LEXIS 34040, *11 (N.D. Cal. Jan. 17, 2017); *Schapker*, 2018 U.S. Dist. LEXIS 28458, *24. This notwithstanding, Plaintiffs identify

meaningful benchmarks by which a prudent fiduciary would have investigated the challenged investments prior to recommending them for inclusion in the Plan. *See Braden*, 588 F.3d at 595-96 (market index and other shares of the same fund were meaningful benchmarks to support allegation of imprudent process for selecting and monitor plan investments); *Moler v. Univ. of Md. Med. Sys*., 2022 U.S. Dist. LEXIS 124804 *10 n.7 (D. Md. July 13, 2022) ("Plaintiffs have provided comparator funds in the same Morningstar category that use the same benchmark market index as the funds at issue. The court is satisfied that the requirement of a meaningful benchmark has been met at the motion to dismiss stage."); *Troudt v. Oracle Corp*., 2017 U.S. Dist. LEXIS 41344, *5 (D. Colo. Mar. 22, 2017) (allegation that one fund "greatly underperformed its benchmark in four out of five years before it was removed from the plan" stated claim of imprudence).

That the benchmarks identified by Plaintiffs had "similar aims, risks, and potential rewards to a challenged funds" further vitiates the Plan Fiduciaries' challenge. This is especially so with respect to the less expensive, equally or better performing share classes of the same funds chosen by Plan Fiduciaries. Such benchmarks hardly constitute an apples-to-oranges comparison. *See also Fleming v. Rollins, Inc.,* 2023 U.S. Dist. LEXIS 30824, at *26 (N.D. Ga. Jan. 30, 2023) (denying motion to dismiss where substantially similar factual allegations "could lead to a reasonable inference of imprudence in the [plan fiduciaries'] investment decision making process"); *Parmer v. Land O'Lakes, Inc.,* 518 F. Supp. 3d 1293, 1304 (D. Minn. 2021) ("Different shares of the same fund can be a meaningful benchmark for comparison.") (citations omitted).

Plaintiffs' allegations stand in stark contrast to the cases cited in the MTD. Those cases are factually inapposite. *E.g., Meiners v. Wells Fargo & Co*., 898 F.3d 820, 823 (8th Cir. 2018)

(affirming dismissal of claim because "alleging that cheaper alternative investments with some similarities exist in the marketplace" was insufficient to establish a meaningful benchmark); *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1167 (6th Cir. 2022) ("A side-by-side comparison of how two funds performed in a narrow window of time, with no consideration of their distinct objectives, will not tell a fiduciary which is the more prudent long-term investment option."); *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 579 F. Supp. 3d 1133, 1148-54 (N.D. Cal. 2022) (dismissing prudence claim where plaintiffs alleged that plan fiduciaries imprudently selected target date funds and global diversified funds that underperformed when compared to similar sized funds with risker asset allocations, as funds with different asset allocations are not meaningful benchmarks); *Wehner v. Genentech, Inc.*, 2021 U.S. Dist. LEXIS 26227 (N.D. Cal. Feb. 9, 2021) (dismissing imprudence claim comparing actively managed funds to passively managed funds where "the Complaint contain[ed] no factual allegations to support a finding that the passively-managed fund identified provides a 'meaningful benchmark'").

Defendants likewise miss the point in characterizing Plaintiff's prudence claim as an improper attack on revenue sharing.  Plaintiffs do not dispute that revenue sharing is a common practice among retirement plans and recordkeepers. Plaintiffs, instead, challenge "whether [the Defendants'] revenue sharing arrangement was reasonable under all the circumstances." *Troudt*, 2017 U.S. Dist. LEXIS 41344, at *3 (citation omitted) (emphasis supplied). Plaintiffs allege facts supporting it was not reasonable.  For example, Plaintiffs allege that the services provided by Fidelity were largely commoditized; that the fees charged by Fidelity and CapFinancial were excessive in comparison to similarly sized plans that they services and excessive relative to the services provided; that Plan Fiduciaries failed to adequately negotiate the revenue sharing fees, to explore flat fee billing, and to obtain rebates of excess fees also state a claim for breach of

prudence. that those fees were excessive relative to the services. (Compl. ¶¶ 80-82, 87, 88, 93, 97-105, 107, 109, 113, 115-19.) These allegations, which were not present in any of the cases cited by Defendants,[7] allow an inference of imprudence. *Accord Johnson v. Fujitsu Tech. & Bus. of Am., Inc.,* 250 F. Supp. 3d 460, 466-67 (N.D. Cal. 2017); *Accord Goodman v. Columbus Reg'l Healthcare Sys.,* 2022 U.S. Dist. LEXIS 13489, *7-8 (M.D. Ga. Jan. 25, 2022); *see also Fleming*, 2023 U.S. Dist. LEXIS 30824, at *30-31 (denying motion to dismiss for imprudent monitoring where, as here, plaintiffs alleged that plan fiduciaries "failed to establish an effective system of review and to replace appointed Plan service providers despite knowledge of those services providers' 'incompeten[ce]' and significant economic harm to the Plan and its participants caused by the 'excessive fees' these service providers charged 'relative to the . . . services [the Plan] received'"); *Pledger v. Reliance Trust Co.*, 240 F. Supp. 3d 1314, 1330 (N.D. Ga. 2017) ("If a fiduciary charges record keeping fees as a percentage of assets, it can be a breach of its fiduciary duty to fail to monitor the fees and rein in excessive compensation.") (citing *Tussey v. ABB, Inc.,* 746 F.3d 327, 336 (8th Cir. 2014)); 29 U.S.C. § 1104(a)(1)(A)(ii) (fiduciary must "defray[] reasonable expenses of administering the plan").

Defendants ignore that Plaintiffs, at this stage, do not need "to rule out every possible lawful explanation" for the allegedly high fees charged in administering the Plan. *Pledger*, 240

---

[7] *E.g., Cunningham v. USI Ins. Servs., LLC*, 2023 U.S. Dist. LEXIS 220905, *11 (S.D.N.Y. Dec. 11, 2023) ("Plaintiff fails to sufficiently plead USICG's fees are excessive or unreasonable compared to similarly-sized RSP providers providing similar services."); *O'Driscoll v. Plexus Corp.*, 2022 U.S. Dist. LEXIS 150844, *18 (E.D. Wis. Aug. 22, 2022) (no facts alleged to support claim of imprudence); *Rosen v. Prudential Ret. Ins. & Annuity Co.*, 718 Fed. Appx. 3, 7 (2d Cir. Oct. 11, 2017) ("Rosen adduces no facts to show that a prudent fiduciary would have acted differently in managing the Separate Accounts."); *Terraza v. Safeway, Inc.*, 241 F. Supp. 3d 1057, 1076 (N.D. Cal. 2017) ("[F]ailure to offer the investment option with the lowest expense ratio is not enough, on its own, to plausibly state a claim for breach of the duty of prudence.").

F. Supp. 3d at 1329 (quoting *Braden*, 588 F.3d at 596-97). Plaintiffs allege sufficient facts to state a claim of imprudence under ERISA § 404(a)(1)(B).

### C.     Plaintiffs' Loyalty Claim Satisfies *Iqbal/Twombly*.

Plaintiffs have alleged sufficient facts supporting that Plan Fiduciaries failed to make decisions "with an eye single toward beneficiaries' interests." *Pegram v. Herdrich*, 530 U.S. 211, 235 (2000); accord 29 U.S.C. § 1104(a)(1)(A). Plaintiffs allege that Plan Fiduciaries intentionally populated the Plan with high-cost investments that paid revenue sharing to make their jobs easier; intentionally chose not to negotiate a better recordkeeping fee to keep Fidelity happy; selected and retained investment options that benefitted the other defendants at the expense of participants; and misrepresented and concealed material facts from participants. These allegations show a breach of loyalty under ERISA § 404(a)(1)(A). *See Henderson v. Emory Univ.,* 252 F. Supp. 3d 1344, 1356 (N.D. Ga. 2017) (fiduciary's decisions benefitting third parties at participants' expense violates duty of loyalty); *Johnson v. Providence Health & Servs*., 2018 U.S. Dist. LEXIS 47569, *25 (W.D. Wash. Mar. 22, 2018) (inclusion and retention of various funds which benefitted Fidelity over participants evidenced that plan fiduciaries violated duty of loyalty);  *Braden*, 588 F.3d at 598 ("[I]t is a breach of [the] duty [of loyalty] affirmatively to mislead a participant or beneficiary."). Defendants' factual challenge to Plaintiffs' allegations is not appropriate at this stage. *See Henderson,* 252 F. Supp. 3d at 1356 (whether fiduciaries intended to benefit TIAA, Fidelity, and Vanguard is not properly determined on motion to dismiss).

Moreover, allegations that Defendants violated the prohibited transaction rules in ERISA § 406 further show that Plaintiffs has stated a claim for breach of loyalty. *See, generally, Donovan v. Cunningham*, 716 F.2d 1455, 1464-65 (5th Cir. 1983) (ERISA § 406 supplements the duty of loyalty under ERISA § 404(a)(1)(A)). That Plan Fiduciaries paid Fidelity and

CapFinancial excessive compensation for unnecessary services rendered to the Plan states a violation of ERISA § 406(a). *See Pledger*, 240 F. Supp. 3d at 1329 (denying motion to dismiss ERISA § 406(a) claim alleging plan fiduciaries offered higher-cost investments to drive revenue to investment fiduciaries); *Braden*, 588 F.3d at 601 (allegation that investment advisor received undisclosed amounts of excessive revenue sharing payments stated claim under ERISA § 406(a)(1)(C)); *Kanawi v. Bechtel Corp.*, 590 F. Supp. 2d 1213, 1228 (N.D. Cal. 2008) (denying summary judgment on excessive fee claim against investment manager under § 406(a) "because it [was] not clear at this stage whether [its] fees were reasonable"); *Martin v. Nat'l Bank*, 828 F. Supp. 1427, 1437 (D. Alaska 1992) (denying summary judgment where "receipt of the origination fees may constitute a violation of ERISA Section 406(a)(1)(D)").

Similarly, allegations that Plan Fiduciaries paid excessive compensation to Fidelity and CapFinancial for services that were neither necessary nor reasonable at the expense of participants state a violation of ERISA § 406(b). *Accord In re Beacon Assocs. Litig.*, 818 F. Supp. 2d 697, 709-11 (S.D.N.Y. 2011) (investment advisor's recommendation to invest in particular investments so it would receive payments stated § 406(b) violation); *Stuart Park Associates LP v. Ameritech Pension Trust,* 51 F.3d 1319 (7th Cir. 1995) (arrangement where broker of partnership would pay officer of pension fund a kickback in exchange for the officer's recommendation that the fund invest in the partnership's real estate project violated ERISA § 406(b)(1)); *Spear v. Fenkell*,  2016 U.S. Dist. LEXIS 135374, *60 (E.D. Pa. Sept. 30, 2016) (fiduciary's receipt of protracted kickbacks from 1999 transaction violated ERISA § 406(b)(3)). Contrary to Defendants' contention, the surplus resulting from the excessive fees that Fidelity and CapFinancial received but did not earn should have been rebated to the Plan and, as such, constituted a Plan asset. *Accord Fleming,* 2023 U.S. Dist. LEXIS 30824, at *63. *See also Troudt*,

2017 U.S. Dist. LEXIS 41344, at *5 (rejecting argument that revenue sharing payments were not plan assets); *Haddock v. Nationwide*, 419 F. Supp. 2d 156, 168 (D. Conn. 2006) (applying "functional approach" to determine that revenue sharing payments constitute plan assets because, as here, they were received by the defendant "at the expense of plan participants or beneficiaries"); ERISA Adv. Op. 2013-03A (July 3, 2013) (plan's right to benefit from the revenue sharing payments was plan asset).

Unlike the cases cited in the MTD, these allegations do not duplicate Plaintiffs' breach of prudence claim. Plaintiffs' allegations raise a plausible inference that Plan Fiduciaries did not act solely in the interests of the Plan's beneficiaries during the class period. *Accord Leber v. Citigroup 401k Plan Inv. Comm.*, 129 F. Supp. 3d 4, 13 (S.D.N.Y. 2015). Defendants' MTD on this basis should be denied.

### D.    Plaintiffs' Breach of Omission Claim Satisfies *Iqbal/Twombly.*

Defendants argue that they could not have breached their fiduciary duty by omission for failing to seek disgorgement or restitution against their co-fiduciaries and/or against Fidelity and CapFinancial because no prohibited transaction occurred. Notwithstanding that such argument is improper at the MTD stage, Plaintiffs, as discussed above, have alleged sufficient facts showing that prohibited transactions did occur.

### E.    Plaintiffs Stated a Claim for Breach of the Duty to Monitor.

Plaintiffs allege that Plan Fiduciaries breached their duty to monitor both their fellow fiduciaries to ensure they fulfilled their respective duties to the Plan and participants, and also Plan service providers to reign in their fees and conflicts of interest. *See In re Duke Energy ERISA Litig.*, 281 F. Supp. 2d 786, 795 (W.D. N.C. 2003) (failure to monitor claim does "not provide independent grounds for relief, but rather depend[s] upon the establishment of an

underlying breach of fiduciary duty cognizable under ERISA"). Defendants do not (and cannot) show otherwise.

## IV.     CONCLUSION

Based on the foregoing, this Court should deny the MTD and award Plaintiffs a reasonable fee under ERISA § 502(g).  Alternatively, this Court should grant Plaintiffs leave to amend, as amendment would not be futile.

Dated: March 25, 2024.

**THE SHARMAN LAW FIRM LLC**
*/s/Paul J. Sharman*
PAUL J. SHARMAN (*pro hac vice approved*)

Georgia State Bar No. 227207

The Sharman Law Firm LLC
11175 Cicero Drive, Suite 100
Alpharetta, GA 30022
Email: paul@sharman-law.com
Phone: (678) 242-5297
Fax: (678) 802-2129

**LAW OFFICES OF PETER W. TILL**
*/s/ Peter W. Till*
Peter W. Till, Esquire
N.J. Bar ID: 002101974
105 Morris Avenue
Springfield Township, NJ
Email: pwt@till-law.com
Phone: (973) 258-0064