UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
ALBANY DIVISION

---

GAIL COLLINS, DEAN DEVITO, MICHAEL LAMOUREUX, AND SCOTT LOBDELL INDIVIDUALLY, ON BEHALF OF THE NORTHEAST GROCERY, INC. 401(K) SAVINGS PLAN AND ON BEHALF OF ALL SIMILARLY SITUATED PARTICIPANTS AND BENEFICIARIES OF THE PLAN,

PLAINTIFFS,

v.

NORTHEAST GROCERY, INC.; THE ADMINISTRATIVE COMMITTEE OF THE NORTHEAST GROCERY, INC. 401(K) SAVINGS PLAN; JOHN AND JANE DOES 1-30 IN THEIR CAPACITIES AS MEMBERS OF THE ADMINISTRATIVE COMMITTEE,

DEFENDANTS.

Civil Action No.
5:24-CV-00080 (DNH/MJK)

---

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

HARTER SECREST & EMERY LLP

Erika N.D. Stanat, Esq.
Michael-Anthony B. Jaoude, Esq.
Franco A. Mirolo, Esq.
1600 Bausch and Lomb Place
Rochester, NY 14604-2711
Telephone: 585.231.1161
Email: estanat@hselaw.com
Email: mjaoude@hselaw.com
Email: fmirolo@hselaw.com

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................................ 1

ARGUMENT .................................................................................................................................... 1

    I.    PLAINTIFFS' CLAIMS RELATING TO TEN OF THE ELEVEN CHALLENGED FUNDS SHOULD BE DISMISSED WITH PREJUDICE. ............................................................. 1

    II.    PLAINTIFFS' RECHARACTERIZATION OF THEIR PRUDENCE CLAIMS IN THEIR OPPOSITION DOES NOT RENDER THE COMPLAINT'S ALLEGATIONS SUFFICIENT. ............................................................................................................................ 4

    III.    PLAINTIFFS' DUTY OF LOYALTY CLAIMS ARE WHOLLY DUPLICATIVE OF THEIR DUTY OF PRUDENCE CLAIMS. ....................................................................................... 8

    IV.    PLAINTIFFS HAVE NOT IDENTIFIED ANY PROHIBITED TRANSACTIONS. ......................... 9

    V.    PLAINTIFFS DO NOT CONTEST THAT NORTHEAST GROCERY IS NOT A PROPER DEFENDANT. ............................................................................................................... 10

    VI.    PLAINTIFFS' DUTY OF OMISSION CLAIMS FAIL AS A MATTER OF LAW ....................... 10

    VII.    PLAINTIFF'S CANNOT OVERCOME THE PLAN'S ADMINISTRATIVE REQUIREMENTS ................................................................................................................ 10

# TABLE OF AUTHORITIES

**PAGE**

**CASES**

*Anderson v. Intel Corp. Inv. Policy Comm.*,
   No. 19-CV-04618-LHK, 2021 U.S. Dist. LEXIS 12496
   (N.D. Cal. Jan. 21, 2021) ................................................................................................6

*Bouvy v. Analog Devices, Inc.*,
   No. 19-cv-881 DMS (BLM), 2020 U.S. Dist. LEXIS 110747
   (S.D. Cal. June 23, 2020)................................................................................................8

*Boyette v. Montefiore Med. Ctr.*,
   No. 22-cv-5280 (JGK), 2023 U.S. Dist. LEXIS 203442
   (S.D.N.Y. Nov. 13, 2023) ...........................................................................................3, 4

*Braden v. Wal-Mart Stores, Inc.*,
   588 F.3d 585 (8th Cir. 2009) ..........................................................................................9

*Brown v. Daikin Am., Inc.*,
   No. 18-cv-11091 (PAC), 2021 U.S. Dist. LEXIS 85195
   (S.D.N.Y. May 4, 2021)..................................................................................................7

*Cryer v. Franklin Templeton Res.*,
   No. C 16-4265 CW, 2017 U.S. Dist. LEXIS 34040
   (N.D. Cal. Jan. 17, 2017) ................................................................................................5

*Falberg v. Goldman Sachs Grp.*,
   No. 19 Civ. 9910 (ER), 2022 U.S. Dist. LEXIS 34012
   (S.D.N.Y. Feb. 14, 2022)............................................................................................3, 4

*Ferguson v. Ruane Cunniff & Goldfarb Inc.*,
   No. 17-cv-6685 (ALC), 2019 U.S. Dist. LEXIS 160112
   (S.D.N.Y. Sep. 18, 2019) ................................................................................................7

*Fin. Inst. Ret. Fund v. Office of Thrift Supervision*,
   964 F.2d 142 (2d Cir. 1992)............................................................................................3

*Forman v. TriHealth Inc.*,
   40 F.4th 443 (6th Cir. 2022) ...........................................................................................7

*In re Omnicom ERISA Litig.*,
   No. 20-cv-4141 (CM), 2021 U.S. Dist. LEXIS 144054
   (S.D.N.Y. Aug. 2, 2021).......................................................................................2, 3, 4

*Johnson v. Providence Health & Servs.*,
   No. C17-1779-JCC, 2018 U.S. Dist. LEXIS 47569
   (W.D. Wash. Mar. 22, 2018) ...................................................................................................8

*Jovel v. I-Health, Inc.*,
   No. 12-CV-5614 (JG), 2013 U.S. Dist. LEXIS 139661
   (E.D.N.Y. Sep. 27, 2013).........................................................................................................3

*Kanawi v. Bechtel Corp.*,
   590 F. Supp. 2d 1213 (N.D. Cal. 2008) ...................................................................................9

*L.I. Head Start Child Dev. Servs. v. Econ. Opportunity Council of Suffolk, Inc.*,
   710 F.3d 57 (2d Cir. 2013) . Opp. Mem. ............................................................................2, 3

*Patterson v. Stanley*,
   No. 16-cv-6568 (RJS), 2019 U.S. Dist. LEXIS 174832
   (S.D.N.Y. Oct. 7, 2019) ...........................................................................................................3

*Pledger v. Reliance Tr. Co.*,
   240 F. Supp. 3d 1314 (N.D. Ga. 2017) ..............................................................................9, 10

*Ret. Bd. of the Policemen's Annuity & Ben. Fund of Chi. v. Bank of N.Y. Mellon*,
   775 F.3d 154 (2d Cir. 2014).....................................................................................................3

*Sacerdote v. N.Y. Univ.*,
   No. 16-cv-6284 (KBF), 2017 U.S. Dist. LEXIS 137115
   (S.D.N.Y. Aug. 25, 2017) ........................................................................................................8

*Singh v. Deloitte LLP*,
   650 F. Supp. 3d 259 (S.D.N.Y. 2023)..................................................................................3, 4

*Taveras v. UBS AG*,
   612 F. App'x 27 (2d Cir. 2015) ...........................................................................................2, 3

*Tibble v. Edison Int'l*,
   639 F. Supp. 2d 1122 (C.D. Cal. 2009) .................................................................................10

*Vellali v. Yale Univ.*,
   308 F. Supp. 3d 678 ................................................................................................................6

*Vellali v. Yale Univ.*,
   333 F.R.D. 10 (D. Conn. 2019).......................................................................................3, 6, 7

**PRELIMINARY STATEMENT**

In their Opposition, Plaintiffs rely on conclusory statements reciting the legal elements of their claims in an attempt to recharacterize the Complaint's allegations and save their claims from dismissal. Plaintiffs also rely on cases readily distinguishable from the facts at hand, many of which, also involve the dismissal of claims supported by far more fulsome allegations than alleged here. Further, Plaintiffs attempt to overcome Defendants' challenges concerning standing by vaguely asserting harm to "the Plan" as a whole. To date, Plaintiffs still have failed to allege investment in ten of the eleven challenged funds. This case should be dismissed.

**ARGUMENT**

**I.   PLAINTIFFS' CLAIMS RELATING TO TEN OF THE ELEVEN CHALLENGED FUNDS SHOULD BE DISMISSED WITH PREJUDICE.**

Plaintiffs inaccurately assert that Defendants "concede, Plaintiffs each invested in at least one of the funds in the Plan for which Plan Fiduciaries lacked a prudent process to monitor…" Pls.' Mem. Opp'n Mot. Dismiss ("Opp. Mem.") at 4. Defendants have made no such concession. Indeed, Defendants identified this issue in their motion to dismiss, pointing out that two of the Plaintiffs do not allege any specific investment in *any* of the eleven challenged funds and the remaining two alleged specific investment in only *one* of the challenged funds. Defs.' Mem. Supp. Mot. Dismiss ("Defs' Mem.") at 3, 8. Plaintiffs do not point the Court to any allegations to dispute this fact. In addition, Plaintiffs admit that they did not suffer concrete financial harm with respect to each of the challenged funds, arguing instead that so long as *some* of the Plaintiffs are invested in *one* of the challenged funds, Plaintiffs have standing to assert plan-wide injuries arising out of investment in any and all funds on behalf of putative class members. *Id.* at 4, 6. Courts have repeatedly rejected this "back-door" approach to standing.

In order to pursue a claim in federal court, a plaintiff must demonstrate that she has Article III standing by showing a concrete and particularized injury in fact that was caused by the conduct of the defendant and can be remedied with a decision in her favor. Thus, while a participant who invested in one fund generally establishes statutory standing to bring claims against plan fiduciaries under ERISA, that same participant may not have Article III standing to assert claims relating to funds in which she did not invest, depending on the plan's structure. *Taveras v. UBS AG*, 612 F. App'x 27, 29 (2d Cir. 2015).

Plaintiffs conflate the two standing requirements and allege standing based on a misplaced reliance on *L.I. Head Start Child Dev. Servs. v. Econ. Opportunity Council of Suffolk, Inc.*, 710 F.3d 57 (2d Cir. 2013) ("*Head Start*"). Opp. Mem. at 4–5. The case in *Head Start* involved a welfare benefit plan with fiduciaries who managed the entirety of the plan's assets on behalf of the participants as a group. *Head Start*, 710 F.3d at 61–62. The remedy plaintiffs sought in *Head Start* (recoupment of funds the Trustees should have collected to keep the plan financially solvent) was not attributable to any individual plaintiff's contributions, but to the plan as a whole. Thus, the *Head Start* court determined that plaintiffs could satisfy Article III by asserting their claims in a derivative capacity. *Id.*

By contrast, the court in *Omnicom* determined that a plaintiff cannot sue in a derivative capacity where she participates in a participant-directed 401(k) plan in which she decides how her contributions will be invested by selecting from a variety of investment options offered by the plan. *See In re Omnicom ERISA Litig.*, No. 20-cv-4141 (CM), 2021 U.S. Dist. LEXIS 144054, at **24–26 (S.D.N.Y. Aug. 2, 2021) ("*Omnicom*"). In that instance, the gains or losses in a participant's account are tied specifically to the particular funds in which the participant has chosen to invest. Under that structure, an injury to the plan does not necessarily result in a

particularized injury to the individual. *Id.* at \*26. Accordingly, the court found that *Head Start*'s analysis was fact-specific and applying *Head Start* broadly to allow derivative standing for participant-directed plans would conflict with the Second Circuit's later decision in *Taveras*. *Id.* at \*29; *accord Taveras*, 612 F. App'x at 29 (holding that "[a]n ERISA plan participant lacks standing to sue for ERISA violations that cause injury to a plan but not individualized injury to the plan participant."); *see also Patterson v. Stanley*, No. 16-cv-6568 (RJS), 2019 U.S. Dist. LEXIS 174832, at \*12-13 (S.D.N.Y. Oct. 7, 2019) (similarly distinguishing *Head Start*). Because the Plan here is a participant-directed plan, Plaintiffs could not have been injured by the availability of funds in which they did not invest in, and *Head Start* is inapplicable.[1]

Plaintiffs do not distinguish their allegations from the ones dismissed for lack of standing in *Taveras*, *Patterson*, *Omnicom*, and recently in both *Singh* and *Boyette*. *See Singh v. Deloitte LLP*, 650 F. Supp. 3d 259, 264 (S.D.N.Y. 2023); *Boyette v. Montefiore Med. Ctr.*, No. 22-cv-5280 (JGK), 2023 U.S. Dist. LEXIS 203442, at \*\*11–12 (S.D.N.Y. Nov. 13, 2023). Instead, they argue these cases represent the minority view and the Court should ignore their holdings based on a footnote in *Falberg v. Goldman Sachs Grp.*, No. 19 Civ. 9910 (ER), 2022 U.S. Dist. LEXIS 34012, at \*15 n.4 (S.D.N.Y. Feb. 14, 2022) (emphasis added) (noting that "*Patterson* and now *Omnicom appear to represent* the minority view in this district."). However, even if *Omnicom* was the minority view at the time *Falberg* was decided, Plaintiffs acknowledge that multiple courts in this circuit have followed *Omnicom* since *Falberg*. Opp. Mem. at 7 (referring

---

[1] The other cases cited by Plaintiffs are inapposite. *See, e.g.*, *Ret. Bd. of the Policemen's Annuity & Ben. Fund of Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154 (2d Cir. 2014) (not an ERISA case); *Jovel v. I-Health, Inc.*, No. 12-CV-5614 (JG), 2013 U.S. Dist. LEXIS 139661 (E.D.N.Y. Sep. 27, 2013) (same); *Fin. Inst. Ret. Fund v. Office of Thrift Supervision*, 964 F.2d 142 (2d Cir. 1992) (did not address issue of whether ERISA participants may challenge funds they are not invested in); *Vellali v. Yale Univ.*, 333 F.R.D. 10 (D. Conn. 2019) (reliant on *Head Start*).

to *Singh*, 650 F. Supp. 3d 259; *Boyette*, 2023 U.S. Dist. LEXIS 203442). Likewise, Plaintiffs have not cited any decisions in which a court adopted *Falberg* over *Omnicom*.

Despite the fact that the details concerning the funds in which the Plaintiffs invested should be readily available to them, Plaintiffs' Complaint does not allege that any Plaintiffs invested in ten of the eleven challenged funds. Nor do they contest that fact in their Opposition. Accordingly, the Court should dismiss claims relating to those ten funds with prejudice.

## II. PLAINTIFFS' RECHARACTERIZATION OF THEIR PRUDENCE CLAIMS IN THEIR OPPOSITION DOES NOT RENDER THE COMPLAINT'S ALLEGATIONS SUFFICIENT.

Plaintiffs' Complaint is replete with conclusory allegations asserting a breach of the fiduciary duty of prudence with no facts to support the same. Their Opposition fares no better. In their Opposition, Plaintiffs now claim they are not challenging any of the particular investments in the Plan but are instead challenging the Plan Fiduciaries' process in selecting the same. Opp. Mem. at 15. Yet, other than broad and conclusory allegations regarding the Fiduciaries' purportedly deficient process, the Complaint's allegations target what Plaintiffs view as sub-par investment options. *Id.*; *see, e.g.*, Compl. ¶¶ 35–43. By failing to adequately plead facts in support of the allegation that the Fiduciaries employed an imprudent process, Plaintiffs are left to rely on a demonstration that the investment options at issue were deficient to support their claim of imprudence. Plaintiffs must provide adequate benchmarks and comparisons to permit this Court to make that analysis. Plaintiffs have not done so.

Instead, Plaintiffs' Opposition contains the same sorts of contradictory and conclusory assertions that can be found throughout the Complaint. For example, Plaintiffs assert in their Opposition that "Plan Fiduciaries then allowed Fidelity to retain this surplus with them and the other Defendants rather than rebate it to the Plan." Opp. Mem. at 2; *see also id*. at 18 (noting failure to "obtain rebates of excess fees also state[s] a claim for breach of prudence."). However,

4

Plaintiffs also acknowledge the Plan provided rebates to participants. Compl. ¶¶ 48, 123, 125; Opp. Mem. at 3. As another example, Plaintiffs assert (while citing no evidence) that Plan Fiduciaries "hid from participants the funds' poor performance history," while simultaneously relying on public data regarding funds' historical performance as evidence that the Plan Fiduciaries' selection process was somehow imprudent. Opp. Mem. at 3; *see, e.g.*, Compl. ¶¶ 9, 40, 42-43, 61. Similarly, Plaintiffs assert that the Plan Fiduciaries failed to properly consider historic performance and costs. Opp. Mem. at 15. Yet, Plaintiffs admit that the Committee replaced at least one fund after reviewing historic performance and cost. Compl. ¶ 37.

At the pleading stage, Plaintiffs must provide an apples-to-apples comparison of a fund's performance with an applicable benchmark to support a reasonable inference that a particular fund was imprudently selected. Further, Plaintiffs must provide evidence to demonstrate that the Committee's process in selecting funds was imprudent generally. The Complaint is devoid of any factual allegations sufficient to create a plausible inference of imprudence.

While Plaintiffs aver broadly that their proffered benchmarks had "similar aims, risks, and potential rewards to a challenged funds [sic]" in their Opposition, they never explain the underlying basis for their position. Opp. Mem. at 17. For example, they do not explain how the alleged underperformance of *one* fund (the 2030 fund) in the Fidelity Freedom Fund series relative to the performance of the 2030 fund in the T. Rowe Price Retirement Fund series renders plausible an inference that the selection of the Fidelity series as a whole was imprudent.[2] *See, e.g.*, Compl. ¶¶ 53, 54. Plaintiffs argue that their conclusory allegations of imprudence, without

---

[2] Compare Plaintiffs' allegation here to *Cryer v. Franklin Templeton Res.*, No. C 16-4265 CW, 2017 U.S. Dist. LEXIS 34040 (N.D. Cal. Jan. 17, 2017) cited by Plaintiffs (denying motion to dismiss as plaintiffs alleged that 2015, 2020, 2025, 2030, 2035, 2040, and 2045 Funds all generally underperformed compared to comparable alternatives over a seven-year period).

5

more, are sufficient because any challenge to the adequacy of alleged benchmarks and comparators is not proper at the motion to dismiss stage. However, courts routinely apply such an analysis to dismiss improperly pled claims. *See, e.g.*, cases cited in Defs' Mem. at 11.

Plaintiffs likewise rely on broad, unsupported statements to allege excessive recordkeeping. For example, Plaintiffs claim they adequately allege that the "fees charged by Fidelity and CapFinancial were excessive in comparison to similarly sized plans that they services [sic] and … the services provided." Opp. Mem. at 18. However, the Complaint provides no context by which a Court could draw a reasonable inference that fees charged to the Plan were "excessive" in view of the Plan size or services provided. *See, e.g.*, Compl. ¶¶ 97, 101. While the Complaint provides information with respect to one plan (the Molson Plan), the data provided demonstrates that the Molson plan was significantly larger than the plan at issue here, both with respect to total assets and number of participants, making it an inapt comparator. Compl. ¶ 98; Defs' Mem. at 17.³ To plausibly state an excessive fee claim, Plaintiffs must do more than rely on conclusory allegations that fees were excessive in comparison to other plans; they must allege sufficient facts on which the Court could plausibly conclude that any proffered comparison is contextually relevant. *Anderson v. Intel Corp. Inv. Policy Comm.*, No. 19-CV-04618-LHK, 2021 U.S. Dist. LEXIS 12496, at *29–30 (N.D. Cal. Jan. 21, 2021).⁴

---

³ Plaintiffs argue that their allegations are sufficient because the information necessary to make out their claims in detail is unavailable to them. *See* Opp. Mem. at 16. However, the data necessary to make comparisons between plans is publicly available. In fact, Plaintiffs rely on that premise to argue that the Committee should have known certain funds underperformed versus other available investment options or recordkeeping fees were excessively high. Accordingly, Plaintiffs' failure to plausibly plead has nothing to do with lack of discovery and their duty of prudence claims should be dismissed.

⁴ For example, Plaintiffs cite to *Vellali*, but there the court denied a motion to dismiss after determining that the complaint presented allegations comparing the general range of costs for a flat fee arrangement versus the plan's recordkeeping arrangement and "quote[d] the advice of industry experts who recommended consolidation." *Vellali v. Yale Univ.*, 308 F. Supp. 3d 678,

6

The *Brown v. Daikan* decision cited to by Plaintiffs is instructive.  Opp. Mem. at 5 (block quoting *Brown v. Daikin Am., Inc.*, No. 18-cv-11091 (PAC), 2021 U.S. Dist. LEXIS 85195 (S.D.N.Y. May 4, 2021).  In *Brown*, the court dismissed breach of fiduciary claims comparable to the ones alleged here.  The *Brown* court first rejected plaintiffs' allegations of underperformance because they did not reveal a deficient process, finding instead that the allegations were impermissibly grounded in hindsight and merely posited that better investment vehicles were available during the class period.  *Brown*, 2021 U.S. Dist. LEXIS 85195, at *19; *see, e.g.*, Compl. ¶¶ 53, 54.  The court also rejected claims of imprudence relating to the selection by plan fiduciaries of investment options associated with more expensive share classes, holding that the failure to include lower-cost share classes did not support an inference of a flawed fiduciary process.  *Id.* at *20; *see, e.g.*, Compl. ¶¶ 29–43.  Lastly, the *Brown* court rejected plaintiffs' conclusory allegation regarding "hidden" recordkeeping and advising fees, determining that the nature of the fee arrangements was disclosed in relevant plan documents.  *Id.*, at *22.  The allegations made by the *Brown* plaintiffs in support of their position that the fees were hidden from participants are virtually identical to those made by Plaintiffs here.  *Compare id.* ("Plaintiffs allege that certain fees . . . were 'hidden' because they were charged in . . . expense ratios and not directly") *with* Opp. Mem. at 3 ("They then misrepresented to participants the hidden fees paid to service providers") *and* Compl. ¶¶ 126, 127.  Even by the standards set in decisions cited by Plaintiffs, they have failed to state a claim.[5]

---

685.  Plaintiffs have not pled anything similar here.  *See Ferguson v. Ruane Cunniff & Goldfarb Inc.*, No. 17-cv-6685 (ALC), 2019 U.S. Dist. LEXIS 160112 (S.D.N.Y. Sep. 18, 2019) (Distinguishing *Vellali*).

[5] Plaintiffs cite to nearly two dozen cases from various jurisdictions and timeframes, apparently hoping that the volume of their citations will obscure the fact that these cases were pled differently.  Moreover, many of these cases hurt their own claims.  *See, e.g., Forman v. TriHealth Inc.*, 40 F.4th 443, 449 (6th Cir. 2022) (dismissing prudence and loyalty claims similar

7

**III.    PLAINTIFFS' DUTY OF LOYALTY CLAIMS ARE WHOLLY DUPLICATIVE OF THEIR DUTY OF PRUDENCE CLAIMS.**

All of Plaintiffs' "loyalty" allegations are restatements of allegations pled in support of Plaintiffs' claim for breach of the duty of prudence.  The only difference is the allegations include a conclusory addition that the imprudent action was somehow done in self-interest.  Plaintiffs cannot construct a breach of loyalty claim in this fashion.  *Sacerdote v. N.Y. Univ.*, No. 16-cv-6284 (KBF), 2017 U.S. Dist. LEXIS 137115, *14 (S.D.N.Y. Aug. 25, 2017) ("To state a loyalty-based claim under ERISA . . ., a plaintiff must do more than simply recast purported breaches of the duty of prudence as disloyal acts.").  Defs' Mem. at 18-22.

| Duty of Prudence Allegation | Duty of Loyalty Allegation |
| --- | --- |
| "Plan Fiduciaries … had not investigated nor considered the availability [sic] lower-fee and equally (if not better) performing share class of identical funds." (Opp. 14). | "Plan Fiduciaries intentionally populated the Plan with high-cost investments that paid revenue sharing to make their jobs easier" |
| "Plan Fiduciaries failed to adequately negotiate the revenue sharing fees" with Fidelity and CapFinancial. (Opp. 18). | "[Plan Fiduciaries] intentionally chose not to negotiate a better recordkeeping fee to keep Fidelity happy" |
| "Plaintiffs challenge the Plan Fiduciaries' flawed process in selecting and [sic] these investments and failure to monitor their performance." Opp. 15). | "[Plan Fiduciaries] selected and retained investment options that benefitted the other defendants at the expense of participants"[6] |

---

to claims at issue here); *Bouvy v. Analog Devices, Inc.*, No. 19-cv-881 DMS (BLM), 2020 U.S. Dist. LEXIS 110747, at *32 (S.D. Cal. June 23, 2020) (dismissing loyalty claims regarding excessive fees pursuant to revenue-sharing under contract with recordkeeper finding unreasonable fees alone did not constitute prohibited transaction); *Johnson v. Providence Health & Servs.*, No. C17-1779-JCC, 2018 U.S. Dist. LEXIS 47569, at *21–23 (W.D. Wash. Mar. 22, 2018) (dismissing prudence and loyalty claims regarding excess recordkeeping fees determining allegations regarding lower-cost recordkeeping alternatives and failure to negotiate cheaper fees as conclusory).

[6] It is unclear who the "other defendants" are, as Plaintiffs have not named as defendants any party that would allegedly benefit from the selection of particular investment options.

| | |
|---|---|
| "[Plan Fiduciaries] misrepresented and affirmatively concealed material information about Plan options and expenses to participants." (Opp. 14). | "[Plan Fiduciaries] misrepresented and concealed material facts from participants" |

Plaintiffs fail to allege any facts to support a theory that Committee members would obtain meaningful personal benefits from failing to negotiate revenue sharing fees favorable to participants. Accordingly, Plaintiffs' duty of loyalty claim should be dismissed with prejudice.

## IV. PLAINTIFFS HAVE NOT IDENTIFIED ANY PROHIBITED TRANSACTIONS.

Plaintiffs fail to identify any facts on which the Court could plausibly infer that a prohibited transaction has occurred. Plaintiffs take the position that the alleged excessive fees paid to Fidelity and CapFinancial constitute both a prohibited transaction and a breach of the duty of prudence, but as explained above, Plaintiffs rely on conclusory allegations to argue that fees were excessive. As a result, their Complaint fails to provide a basis on which the Court could plausibly infer that the recordkeeping relationship constituted a prohibited transaction.

The cases relied upon by Plaintiffs all feature different allegations than the ones presented in the Complaint. In those cases, plaintiffs alleged a *quid pro quo* arrangement involving some form of self-dealing which furthered defendants' interests. *Pledger v. Reliance Tr. Co.*, 240 F. Supp. 3d 1314, 1333 (N.D. Ga. 2017) (trustee selected investments which allegedly paid trustee excessive fees and provided revenue sharing to other defendant service providers); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 596 (8th Cir. 2009) (finding selection of funds with revenue sharing was part of a *quid pro quo* for access to plan clients); *Kanawi v. Bechtel Corp.*, 590 F. Supp. 2d 1213, 1228 (N.D. Cal. 2008) ("[T]here may have been a prohibited transaction . . . because … **FIA may have engaged in prohibited self-dealing**.") (emphasis added)). Here, Plaintiffs do not plausibly identify any *quid pro quo* arrangement for

9

the benefit of any Defendants, and their conclusory statements alleging the existence of personal benefits derived from revenue sharing are insufficient. Defs' Mem. at 20–21; *Pledger*, 240 F. Supp. 3d at 1333 (dismissing duty of loyalty claims regarding selection of questionable funds where plaintiffs failed to allege any self-dealing or *quid pro quo* arrangement).

V. **PLAINTIFFS DO NOT CONTEST THAT NORTHEAST GROCERY IS NOT A PROPER DEFENDANT.**

Plaintiffs do not contest in their Opposition that the Plan documents demonstrate that Northeast Grocery, Inc. does not appoint the members of the Committee and is not a Plan fiduciary. Defs' Mem. at 22. Accordingly, Plaintiffs' failure to monitor claim asserted against Northeast Grocery, Inc. should be dismissed with prejudice.

VI. **PLAINTIFFS' DUTY OF OMISSION CLAIMS FAIL AS A MATTER OF LAW.**

Plaintiffs' conclusory statements in their Opposition regarding prohibited transactions and Defendants' alleged failure to bring an action to remedy them are insufficient. Opp. Mem. at 22. Plaintiffs cannot merely recite the elements of a claim in conclusory fashion to satisfy their pleading burden. *Tibble v. Edison Int'l*, 639 F. Supp. 2d 1122, 1127 (C.D. Cal. 2009).

VII. **PLAINTIFF'S CANNOT OVERCOME THE PLAN'S ADMINISTRATIVE REQUIREMENTS**

Plaintiffs admit that the Plan's exhaustion requirements apply to "claims for benefits…and all other claims involving the Plan[.]" Opp. Mem. at 8. As Plaintiffs are asserting claims regarding the alleged "improper administration of the Plan," *id.*, their claims involve the Plan and Plaintiffs must exhaust their administrative remedies prior to filing a lawsuit, in keeping with the Plan's requirements. Plaintiffs, in their Opposition, rely on an argument that the claims are timely as Plan Fiduciaries allegedly "affirmatively concealed" any breaches. But other than conclusory allegations, Plaintiffs have failed to allege any facts of concealment in the Complaint. *See,* Compl. ¶¶ 156, 158. Accordingly, the claims should be dismissed.

Dated: April 1, 2024
      Buffalo, New York			Harter Secrest & Emery LLP

By: /s/ Erika N.D. Stanat
    Erika N.D. Stanat, Esq.
    Michael-Anthony B. Jaoude, Esq.
    Franco A. Mirolo, Esq.
    *Attorneys for Defendants Northeast Grocery, Inc.; The Administrative Committee of the Northeast Grocery, Inc. 401(k) Savings Plan; John and Jane Does 1-30 in their capacities as members of the Administrative Committee*
    1600 Bausch and Lomb Place
    Rochester, NY 14604-2711
    Telephone: 585.231.1161
    Email: estanat@hselaw.com
    Email: mjaoude@hselaw.com
    Email: fmirolo@hselaw.com

To: Peter W. Till, Esq.
    Law Offices of Peter W. Till
    *Attorneys for Plaintiffs*
    105 Morris Avenue
    Springfield Township, NJ 07081
    Telephone: (973) 258-0064
    Email: pwt@till-law.com

    Paul J. Sharman, Esq.
    *Attorneys for Plaintiffs*
    The Sharman Law Firm LLC
    11175 Cicero Drive, Suite 100
    Alpharetta, GA 30022
    Telephone: (678) 802-2129
    Email: paul@sharman-law.com